PAID

No Summons Issued

PATRICIA ELAINE ANDERSON HOOPER
325 E. Avenida Cordoba
San Clemente, CA 92672
Tel: (949) 922-0929
Email: patricia@royceip.com

In Pro Per

FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

FEB 1 7 2026

CENTRAL DISTRICT OF CALIFORNIA
BY_____ DEPUTY

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

PATRICIA ELAINE ANDERSON HOOPER

Plaintiff,

vs.

COUNTY OF MONO, CALIFORNIA; JUNE LAKE PUBLIC UTILITIES DISTRICT; JULIE BALDWIN; TODD KIDWELL; MARK FOGG; LC EQUITY GROUP, INC.; PATRICK ROMAN; BRIAN GETZ; BRIAN CRONIN, ESQ.; PRENOVOST, NORMANDIN, BERGH & DAWE; CRONIN & CRONIN ATTORNEYS; RICHARDSON GRISWOLD, ESQ.; RECEIVER GRISWOLD LAW; GRISWOLD LAW, APC; MATTHEW SILVER; CIVICA LAW GROUP, APC; NEIL SHEAFFER,

Case No.: 8:26-cv-00351-HDV-ADS

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

1. Violation of Civil Rights – 42 U.S.C. § 1983 (Due Process, Equal Protection, Fourth Amendment)

2. Conspiracy to Violate Civil Rights – 42 U.S.C. § 1983

3. Fraud – Intentional Misrepresentation, Concealment, and Promissory Fraud

4. Fraud – Intentional Misrepresentation, Concealment, and Fraudulent Inducement

ESQ.; JARROD READY, ESQ.; LAW OFFICES OF JARROD READY; DOE COUNTY ATTORNEYS 1-5; NICHOLAS CRISS; CHRISTINA A. HICKEY, ESQ.; JOSHUA NELSON, ESQ.; ANNE BRANHAM; BEST BEST & KRIEGER LLP; JACOB GRAHAM, ESQ.; KEVIN J. DEHOFF, ESQ.; ANGELO KILDAY & KILDUFF; DOE INVESTORS OF LC EQUITY GROUP 11-60; RESS FINANCIAL CORPORATION; CHRISTOPHER LORIA; ASHWOOD TD SERVICES, LLC, and DOES 61-100,

Defendants.

5. Abuse of Process

6. Fraud (Intentional Misrepresentation, Concealment, and Scheme to Defraud)

7. Conversion

8. Abuse of Process

9. Fraud (Fraudulent Concealment)

10. Fraud (Intentional Misrepresentation, Concealment, and Promissory Fraud) and Intrinsic/Extrinsic Fraud (Common Law)

11. Civil Conspiracy to Commit Fraud and Deprive Constitutional Rights

12. Intentional Interference with Prospective Economic Advantage (California)

13. Violation of Equal Protection Clause – Selective Enforcement and Disparate Treatment

14. Unlawful Taking Without Just Compensation

15. Declaratory Judgment and Injunctive Relief (28 U.S.C. § 2201; Cal. Code Civ. Proc. § 1060; Fed. R. Civ. P. 65)

16. 42 U.S.C. § 1983 — Procedural Due Process & Equal Protection

17. Declaratory Judgment re: Invalid Receiver Appointments and Orders

18. Quiet Title (Cal. Code Civ. Proc. §§ 760.010–764.080)

19. Wrongful Foreclosure; Cancellation of Instruments (Civ. Code § 3412); Restitution/Constructive Trust

20. Fraud (Intentional Misrepresentation and Concealment – Post Foreclosure Scheme)

21. Slander of Title (California Common Law)

22. Claim and Delivery / Return of Personal Property (CCP § 512.010 et seq.)

23. Excessive Fines — U.S. Const. amend. VIII (as incorporated by amend. XIV) 42 U.S.C. § 1983; Monell Liability (County of Mono)

24. Taking Without Just Compensation — U.S. Const. amend. V (as incorporated by amend. XIV) 42 U.S.C. § 1983;

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

Monell Liability (County of Mono)

25. Inverse Condemnation — Cal. Const. art. I, § 19 (Taking/Damaging for Public Use)

26. Declaratory & Injunctive Relief for Violations of the California Constitution (Art. I, § 7 – Due Process; Art. I, § 13 – Unreasonable Searches/Seizures)

**DEMAND FOR JURY TRIAL**

## COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

### I. INTRODUCTION

1. This action arises from the misuse of governmental and court-appointed authority to deprive Plaintiff of her constitutional rights and her property.

2. Plaintiff was the legal owner of valuable real property in Mono County, California. Rather than receiving the protections guaranteed by the Constitution, she was subjected to coordinated actions by public officials, a bankruptcy trustee, a court-appointed receiver, and associated private parties

that resulted in the loss of her property, the suppression of legitimate refinancing and sale efforts, and the denial of meaningful access to judicial process.

3. Plaintiff alleges that Defendants, acting under color of state law and in joint participation with private actors, engaged in conduct that included:

- Enforcement of orders entered without jurisdiction or containing unauthorized language;

- Suppression of accurate property valuation and interference with third-party purchase and refinance offers;

- Imposition of liens, fees, and financial exactions disproportionate to any lawful purpose;

- Lockout and physical control of Plaintiff's property through receivership mechanisms; and

- Continued billing and enforcement actions even after foreclosure and during periods of automatic stay or divested jurisdiction.

4. As a result of these actions, Plaintiff lost property with an estimated fair market value in excess of $2.8 million, lost substantial rental and business income, incurred significant legal expense, and suffered severe personal and financial harm.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

5. This case presents federal questions under 42 U.S.C. § 1983 and related statutes concerning due process, unlawful takings, retaliation for protected petitioning activity, excessive fines, and joint action between public officials and private parties. Plaintiff seeks compensatory damages, declaratory and injunctive relief, and all other remedies permitted by law.

**II. JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983 and related federal civil rights statutes.

7. This Court also has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367 because those claims form part of the same case or controversy and arise from a common nucleus of operative facts.

8. To the extent any claims are deemed to arise in or relate to Plaintiff's bankruptcy proceedings, this Court further has jurisdiction under 28 U.S.C. § 1334. Plaintiff asserts that this Court has authority to adjudicate all claims asserted herein and expressly reserves all rights under Article III and the Seventh Amendment.

9. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to Plaintiff's claims

occurred in this District, including the acts and injuries arising from the foreclosure, receivership, recording of liens and instruments, and related conduct affecting Plaintiff and her property in California.

10. This Court has personal jurisdiction over each Defendant because each Defendant resides in, conducts business in, or purposefully directed acts toward the State of California, and the claims arise out of those acts.

## II. PARTIES

**Plaintiff**

11. PATRICIA ELAINE ANDERSON HOOPER ("Plaintiff") is an individual residing in San Clemente, California. At all relevant times, Plaintiff owned and held legal title to real property located in Mono County, California, commonly referred to herein as the "June Lake Property."

12. Plaintiff was also a debtor and party in bankruptcy proceedings pending in the United States Bankruptcy Court for the Central District of California.

13. Plaintiff brings this action in her individual capacity to seek redress for constitutional and statutory violations, and related state-law torts, arising from Defendants' conduct as alleged herein. Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

7

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

## A. Public Entity Defendant – County of Mono

14. Defendant COUNTY OF MONO, CALIFORNIA ("Mono County") is a public entity organized under the laws of the State of California and is a "person" within the meaning of 42 U.S.C. § 1983.

15. At all relevant times, Mono County acted through its departments, elected officials, appointed officers, employees, agents, and retained counsel. Plaintiff alleges that Mono County is liable under 42 U.S.C. § 1983 pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for policies, customs, practices, and ratified conduct that were a moving force behind the constitutional violations alleged herein.

16. Plaintiff alleges that Mono County, through official policy, longstanding custom, and actions of its final policymakers, engaged in and ratified conduct that deprived Plaintiff of rights secured by the Constitution and laws of the United States, including but not limited to:

(a) retaliation for protected petitioning and litigation activity;

(b) unreasonable searches and seizures of property;

(c) deprivation of property without due process of law;

(d) imposition and enforcement of excessive financial exactions and penalties; and

---

8

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

(e) interference with Plaintiff's lawful ownership, use, and disposition of her real property.

17. Plaintiff further alleges that Mono County, acting under color of state law and in concert with other Defendants, committed, directed, authorized, ratified, or failed to prevent the acts and omissions described in this Complaint, and is liable for the resulting damages and equitable relief sought herein.

**Individual Code Enforcement Defendants**

18. Defendant NICHOLAS CRISS ("Criss") was, at all relevant times, a Code Enforcement Officer employed by Mono County. Plaintiff alleges that Criss acted under color of state law and within the course and scope of his employment.

19. Plaintiff alleges that Criss conducted inspections of Plaintiff's June Lake property, prepared and submitted inspection reports, and participated in enforcement actions affecting the property. Plaintiff further alleges that certain inspection findings attributed to Criss were materially inaccurate or misleading and were relied upon in administrative and judicial proceedings concerning Plaintiff's property.

20. Defendant DOE CODE ENFORCEMENT OFFICER 1 (true name presently unknown) is an individual Mono County code enforcement officer

who accompanied Criss during one or more inspections of Plaintiff's property and participated in the preparation or approval of inspection reports and related enforcement actions. This Defendant is sued in his individual capacity for damages and in his official capacity for prospective declaratory and injunctive relief. Plaintiff will amend this Complaint to substitute the true name of this Defendant when ascertained.

**Compliance Division**

21. Defendant MONO COUNTY COMPLIANCE DIVISION is a department or administrative unit of Mono County that administers code enforcement and compliance activities. The Compliance Division is not a separate legal entity distinct from Mono County and is identified for descriptive purposes only. All allegations concerning the Compliance Division are asserted against Mono County and against the individual employees and agents acting within it.

**County Counsel and Outside Counsel (Mono County)**

22. Defendant STACEY SIMON, ESQ. ("Simon") was, at all relevant times, Deputy County Counsel for Mono County and served as legal advisor to the Mono County Board of Supervisors. Plaintiff alleges Simon acted under color of state law and personally participated in drafting, reviewing, approving, and transmitting proposed orders and enforcement documents

affecting Plaintiff's property interests, including documents that contained material language beyond the scope of the Court's oral rulings and that were later relied upon to impair Plaintiff's title, restrict refinancing and sale efforts, and justify enforcement actions.

23. Defendant CHRISTOPHER L. BECK, ESQ. ("Beck") was, at all relevant times, County Counsel for Mono County. Plaintiff alleges Beck acted under color of state law and participated in directing, authorizing, and/or ratifying the conduct of Mono County attorneys and outside counsel in connection with enforcement actions, liens, and court filings affecting Plaintiff's property rights, including the submission and enforcement of proposed orders and instruments that Plaintiff alleges were materially inconsistent with the Court's oral rulings.

24. Defendant ANNE L. FRIEVALT, ESQ. ("Frievalt") was, at all relevant times, an attorney for Mono County. Plaintiff alleges Frievalt acted under color of state law and participated in the preparation, review, and submission of enforcement filings and proposed orders affecting Plaintiff's property rights, including communications and submissions that Plaintiff alleges were used to obstruct refinancing and sale efforts and to maintain liens and encumbrances on the property.

25. Defendants DOE COUNTY ATTORNEYS 1–5 are attorneys retained by Mono County and/or acting as outside counsel for Mono County whose identities are presently unknown to Plaintiff. Plaintiff alleges these Doe Defendants participated in the drafting, submission, and enforcement of proposed orders and related filings that impaired Plaintiff's property rights. Plaintiff will amend this Complaint to substitute their true names when ascertained.

**Outside Counsel Firms**

27. Defendant CHRISTINA A. HICKEY, ESQ. ("Hickey") is, and at all relevant times was, an attorney with BBK. Plaintiff alleges Hickey signed and transmitted proposed orders and related documents in the Mono County action and participated in submissions that Plaintiff alleges contained material language beyond the scope of the Court's oral rulings and that were later relied upon to impair Plaintiff's property rights.

28. Defendant JOSHUA NELSON, ESQ. ("Nelson") is, and at all relevant times was, an attorney with BBK. Plaintiff alleges Nelson participated in the preparation, approval, and submission of proposed orders and filings affecting Plaintiff's property rights.

29. Defendant ANNE E. BRANHAM, ESQ. ("Branham") is, and at all relevant times was, an attorney with BBK. Plaintiff alleges Branham

participated in the preparation, approval, and submission of proposed orders and filings affecting Plaintiff's property rights.

30. Defendant BEST BEST & KRIEGER LLP ("BBK") is a California limited liability partnership and law firm that, at all relevant times, served as outside counsel for Mono County in matters affecting Plaintiff's June Lake property.

31. Plaintiff alleges that BBK, through its attorneys and agents, participated in the drafting, preparation, transmission, and recording of proposed orders and related documents affecting Plaintiff's property rights, including documents Plaintiff alleges contained material language beyond the scope of the Court's oral rulings and were later relied upon to impair Plaintiff's title and property rights.

32. BBK is liable for the acts of its attorneys and agents committed within the course and scope of their agency and employment.

33. Defendant JACOB GRAHAM, ESQ. ("Graham") is, and at all relevant times was, an attorney associated with AKK. Plaintiff alleges Graham participated in filings and submissions affecting Plaintiff's property rights, including the preparation and submission of proposed orders and enforcement documents.

34. Defendant ANGELO KILDAY & KILDUFF ("AKK") is a California law firm that represented Mono County and/or other defendants in matters affecting Plaintiff's property interests. Plaintiff alleges AKK, through its attorneys and agents, participated in the drafting, submission, and enforcement of court filings and proposed orders that Plaintiff alleges were used to impair Plaintiff's property rights.

35. Defendant KEVIN J. DEHOFF, ESQ. ("DeHoff") is, and at all relevant times was, an attorney associated with AKK. Plaintiff alleges DeHoff participated in filings and submissions affecting Plaintiff's property rights, including the preparation and submission of proposed orders and enforcement documents.

36. Defendant MATTHEW SILVER, ESQ. ("Silver") is, and at all relevant times was, an attorney with CIVICA LAW GROUP, APC, who served as outside counsel for Mono County. Plaintiff alleges Silver personally participated in filing and litigating motions in Plaintiff's bankruptcy proceedings and in lodging proposed orders affecting Plaintiff's property rights. Plaintiff further alleges that Silver asserted Mono County held a real property interest in the June Lake property and submitted proposed orders containing substantive provisions not reflected in the

bankruptcy court's oral ruling, including provisions affecting the scope and duration of stay relief.

37. DOE FINANCE OFFICIALS 1–5 are employees or agents of Mono County responsible for the assessment, billing, recording, and enforcement of taxes, penalties, fines, fees, and related financial exactions against Plaintiff's June Lake property. Plaintiff alleges these Doe Defendants participated in, approved, or implemented the unlawful billing and lien practices alleged herein. Plaintiff will amend this Complaint to substitute their true names and capacities when ascertained.

**B. Public Entity Defendants – June Lake Public Utilities District and Officials**

38. Defendant JUNE LAKE PUBLIC UTILITIES DISTRICT ("PUD") is a public agency and special district operating in Mono County, California.

39. Plaintiff alleges that PUD, through its officers, employees, and agents, engaged in billing practices and lien-recording conduct affecting Plaintiff's June Lake property, including the recording and maintenance of liens and financial claims that impaired Plaintiff's title, interfered with refinancing and sale efforts, and contributed to Plaintiff's economic harm.

40. Defendant JULIE BALDWIN ("Baldwin") is, and at all relevant times was, an employee of PUD. Plaintiff alleges Baldwin acted under color of state law and personally participated in preparing, authorizing, and/or causing liens and related encumbrances to be recorded against Plaintiff's property, including liens Plaintiff alleges were recorded for charges that were not delinquent, were previously paid, and/or were not reflected in prior title reports.

41. Defendant TODD KIDWELL ("Kidwell") is, and at all relevant times was, a manager, supervisor, and/or policymaking official of PUD. Plaintiff alleges Kidwell had actual notice of Plaintiff's complaints regarding improper billing and lien-recording practices affecting Plaintiff's property and, despite such notice, failed to take corrective action and permitted continuation of the challenged practices.

42. Defendant MARK FOGG ("Fogg") is, and at all relevant times was, a director, board member, and/or official of PUD. Plaintiff alleges Fogg had actual notice of Plaintiff's complaints regarding improper billing and lien-recording practices affecting Plaintiff's property and, despite such notice, failed to take corrective action and permitted continuation of the challenged practices.

## C. Private Parties – LC Equity Group and Related Actors

43. Defendant LC EQUITY GROUP, INC. ("LC Equity") is a California corporation that acted as lender and/or beneficiary under a deed of trust affecting the June Lake property. Plaintiff alleges LC Equity engaged in conduct during 2024 and 2025, including submission of inflated or unsupported claims in bankruptcy proceedings and foreclosure-related actions, that contributed to the loss of Plaintiff's property and related damages.

44. Defendant BRIAN GETZ ("Getz") is, and at all relevant times was, an officer, agent, and/or representative of LC Equity. Plaintiff alleges Getz participated in loan servicing, communications, negotiations, and foreclosure-related conduct affecting Plaintiff's property and bankruptcy rights.

45. Defendant PATRICK ROMAN ("Roman") is, and at all relevant times was, an officer, agent, and/or representative of LC Equity. Plaintiff alleges Roman participated in loan servicing, communications, and foreclosure-related conduct affecting Plaintiff's property and bankruptcy rights.

46. Defendant RESS FINANCIAL CORPORATION ("RESS") is a California corporation that acted as foreclosure trustee, agent, and/or

servicer in connection with foreclosure proceedings affecting Plaintiff's property.

47. Defendant ASHWOOD TD SERVICES, LLC ("Ashwood") is a California limited liability company that acted as trustee, agent, and/or servicer in connection with foreclosure sale proceedings affecting Plaintiff's property.

48. Defendant CHRISTOPHER LORIA ("Loria") is, and at all relevant times was, a trustee's sale officer associated with Ashwood and/or RESS. Plaintiff alleges Loria participated in foreclosure sale actions affecting Plaintiff's property.

49. Defendants DOE INVESTORS 1–50 OF LC EQUITY GROUP are persons and entities whose identities are presently unknown to Plaintiff but who held beneficial interests in the loan, deed of trust, and/or foreclosure proceeds relating to Plaintiff's property. Plaintiff is informed and believes, and thereon alleges, that LC Equity's officers and agents represented that material foreclosure-related decisions required investor approval. Plaintiff alleges these Doe Investor Defendants authorized, ratified, directed, and/or benefitted from the conduct alleged herein and will amend this Complaint to substitute their true names when ascertained.

50. Defendant BRIAN CRONIN, ESQ. ("Cronin") is, and at all relevant times was, an attorney licensed in the State of California who represented LC Equity Group, Inc. and/or related entities in matters affecting Plaintiff's June Lake property. Plaintiff alleges Cronin participated in communications, foreclosure-related conduct, and court filings affecting Plaintiff's property rights, including conduct alleged herein relating to the submission and enforcement of instruments and positions that contributed to the loss of Plaintiff's property and related damages.

51. Defendant CRONIN & CRONIN ATTORNEYS ("Cronin & Cronin") is, and at all relevant times was, a California law firm engaged in the practice of law. Plaintiff alleges Cronin & Cronin acted through its attorneys and agents, including Defendant Cronin, in connection with the conduct alleged herein and is liable for acts committed within the course and scope of agency and employment.

52. Defendant PRENOVOST, NORMANDIN, BERGH & DAWE, A PROFESSIONAL CORPORATION ("PNBD") is, and at all relevant times was, a California professional corporation engaged in the practice of law. Plaintiff alleges PNBD participated through its attorneys and agents in conduct affecting Plaintiff's property rights as alleged herein.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

**D. Receiver and Receiver's Counsel**

53. Defendant RICHARDSON GRISWOLD, ESQ. ("Griswold") was appointed as receiver in the Mono County action. Plaintiff alleges Griswold acted under color of state law and/or as a court-appointed officer and participated in conduct affecting Plaintiff's property, including interference with prospective buyers, suppression of sale efforts, submission of inflated billings, and actions taken beyond the scope of lawful authority.

54. Defendant GRISWOLD LAW, APC is a California professional corporation. Plaintiff alleges Griswold Law acted through Griswold and other attorneys and agents in connection with the receivership conduct alleged herein.

55. Defendants NEIL SHAFFER, ESQ., JARROD READY, ESQ., and LAW OFFICES OF JARROD READY served as counsel to the receiver. Plaintiff alleges these Defendants participated in conduct described herein related to the receivership, including the preparation, submission, and enforcement of proposed orders and filings affecting Plaintiff's property rights.

56. Defendants DOES 51–100 are persons or entities whose identities are presently unknown to Plaintiff but who participated in, aided, benefitted from, authorized, directed, or ratified the acts alleged herein. These include,

without limitation, additional Mono County employees or contractors, additional attorneys or agents involved in receivership or foreclosure proceedings, and other persons involved in the conduct described in this Complaint.

57. Plaintiff alleges that each Defendant named herein acted in concert with, conspired with, aided and abetted, or jointly participated with the other Defendants, and that each is jointly and severally liable for the acts and damages alleged. Plaintiff will amend this Complaint to substitute the true names and capacities of Doe Defendants when ascertained.

### III. FACTUAL BACKGROUND: PATTERN OF FRAUD, COLLUSION, AND ABUSE

*A. Procedural History and Mono County's Lis Pendens Fraud and Title Interference*

58. Like many in the hospitality industry, Plaintiff's business was severely impacted by the COVID-19 pandemic. During government-mandated shutdowns in 2020, hotels were closed entirely for extended periods, then permitted to reopen only under severely restricted conditions. Plaintiff's operations were further disrupted by California wildfires later that year.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

59. In or around mid-2020, Plaintiff contacted the Mono County Tax Collector to notify him that she intended to make installment payments toward the Transient Occupancy Tax ("TOT") she understood was due, which Plaintiff believed was approximately $3,200 at that time. The Tax Collector acknowledged Plaintiff's outreach and stated he would review the records and respond.

60. Over the following weeks, Plaintiff followed up repeatedly. Each time, Plaintiff was told the Tax Collector needed more time to "figure it out." During the final conversation, the Tax Collector stated he believed the amount owed was closer to $8,000. Plaintiff disputed that amount as excessive and inconsistent with the property's limited or nonexistent operations during shutdown periods.

61. After that conversation, Plaintiff was no longer able to reach the Tax Collector. Calls went unanswered, or Plaintiff was told he was unavailable.

62. Plaintiff was shocked to later learn that Mono County had filed a civil enforcement action seeking over $108,000 in alleged liability. The County's claimed sum included not only TOT amounts never previously discussed, but also excessive penalties, fees, and sanctions. The lawsuit

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

came as a complete surprise to Plaintiff, who had been actively attempting to resolve the matter cooperatively.

63. Mono County filed the original complaint on October 29, 2020, captioned County of Mono v. K.R. Property Development & Real Estate LLC, et al., Mono County Superior Court Case No. CV200081. Plaintiff was not named in the original complaint; instead, the County named two business entities, including K.R. Property Development & Real Estate LLC and Royce Asset Management.

64. Plaintiff did not receive a copy of the complaint until late January 2021. On February 12, 2021, Plaintiff contacted Mono County requesting an extension of time to respond but received no reply.

65. Because time to respond was running short, Plaintiff provided ex parte notice for a February 25, 2021 hearing, explaining that additional time was needed to hire counsel for the LLC. Mono County opposed the request, but the Court granted Plaintiff an extension.

66. Plaintiff later learned from a local attorney that Mono County had been filing enforcement lawsuits against multiple local hotel owners and then pressuring settlement. Plaintiff was informed that the County's strategy was to allege large, unsupported amounts due, file suit, then demand settlement to avoid litigation.

---

23
COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

67. Consistent with that strategy, Mono County made a settlement demand of approximately $50,000. Plaintiff alleges this figure was unsupported by any lawful accounting of TOT liability, and Plaintiff could not afford the amount.

68. In the months that followed, including late 2021 into 2022, Plaintiff engaged in settlement negotiations. The parties eventually discussed a proposed payout in the range of approximately $10,000 to $12,500. Plaintiff believed this amount was still far higher than what was actually owed, but Plaintiff was willing to resolve the matter to avoid protracted litigation.

69. On April 28, 2021, Mono County recorded a Notice of Pendency of Action ("lis pendens") against Plaintiff's June Lake property, interfering with Plaintiff's ability to refinance, obtain investment, or sell the property.

70. In or around June 2021, Plaintiff filed a Motion to Intervene and a Motion to Expunge the lis pendens, supported by declarations and legal argument showing that the County had no valid real-property claim that could support a lis pendens.

71. At hearing, the Court denied Plaintiff's Motion to Intervene but granted the Motion to Expunge the lis pendens, doing so sua sponte because Plaintiff was not a party. The Court issued a Minute Order dated July 29,

2021 granting expungement and ordering Mono County to record the appropriate release.

72. Despite the Court's ruling, Mono County refused to comply for approximately five months. The County's refusal obstructed Plaintiff's ability to refinance or secure a buyer.

73. Meanwhile, Mono County recorded a second Notice of Lis Pendens dated September 30, 2021, attempting to circumvent the Court's expungement ruling without filing a proper motion.

74. Around the same time, Mono County filed a First Amended Complaint in which it named Plaintiff individually. This was particularly striking because Mono County had previously opposed Plaintiff's attempt to intervene.

75. Plaintiff alleges that from the outset of the underlying action, Plaintiff was never properly served in accordance with California statutory requirements for service of process. The record reflects no personal service on Plaintiff, nor any valid substitute service that meets California law. Plaintiff did not receive the summons and complaint in a manner that would confer personal jurisdiction over Plaintiff.

76. Despite the absence of lawful service, proceedings were initiated and orders were entered as though jurisdiction had been properly obtained,

compounding prejudice and requiring repeated defensive action by Plaintiff to protect her rights.

77. The First Amended Complaint also added Praedium LLC, a company associated with Plaintiff's business partner, based on a lien for labor and materials that had been invested into renovation of the June Lake property.

78. On December 16, 2021, the Mono County Superior Court held a hearing addressing Plaintiff's request to expunge the lis pendens and Mono County's request for a preliminary injunction.

79. During that hearing, the Court explicitly denied Mono County's request for the second lis pendens dated September 30, 2021, rejected the order Mono County attorneys had submitted, and instructed that any further filings affecting title had to be brought by noticed motion. The Court made clear that Mono County's September 30, 2021 lis pendens document was not approved.

80. The Court executed Plaintiff's narrowly tailored expungement order consistent with the Court's rulings. However, when Mono County recorded the court-signed order, Mono County deliberately appended, as an "Exhibit A," the very document the Court had rejected.

81. The wrongfully appended "Exhibit A" referenced the "First Amended Complaint" and other terms aimed at preserving the effect of a lis pendens. This unauthorized addition materially contradicted the Court's oral rulings as reflected in the reporter's transcript and created a fraudulent appearance of renewed lis pendens.

82. Plaintiff alleges this conduct was a deliberate manipulation of court records and a fraud on the court, undertaken for the purpose of sabotaging Plaintiff's refinancing and preserving unlawful leverage through improper title interference.

83. Plaintiff alleges that Mono County's title interference was not isolated but formed part of a broader campaign of unlawful enforcement and retaliation, including: (a) filing and refusing to remove invalid administrative liens; (b) issuing improperly supported code enforcement actions; and (c) submitting and recording orders that contradicted the judicial record.

84. Plaintiff learned of invalid liens after multiple prospective buyers and investors walked away. Plaintiff obtained a title report confirming numerous liens and encumbrances, many of which Plaintiff alleges were invalid and later removed only after Plaintiff repeatedly objected and demonstrated their invalidity.

85. Plaintiff alleges County actors utilized and relied upon law enforcement tools, including inspection warrants, to bolster a false narrative of nuisance or code violations.

86. Plaintiff learned of one such inspection warrant the day before the scheduled entry. The warrant was drafted to permit forced entry. Plaintiff immediately provided ex parte notice. A substitute judge agreed the factual basis did not support a warrant as issued, and Plaintiff agreed to a limited "walk-through – view only."

87. Following the walk-through, Defendant Nicholas Criss misrepresented facts in his report, including statements that wall heaters were not working when they were never tested because no lighter was available. Plaintiff alleges Criss used these false statements to justify subsequent red-tagging and shutdown actions.

88. These actions suppressed Plaintiff's ability to earn income, refinance, attract investors, or preserve equity, and reflect a pattern of official abuse of process under color of law.

89. Plaintiff alleges the County's targeting worsened after Plaintiff filed a cross-complaint naming Mono County and Defendant Criss individually.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

90. Plaintiff filed an appeal with the Mono County Appeal Board seeking relief. Plaintiff later learned the Board was comprised of County attorneys and local officials closely aligned with the County's enforcement apparatus, including individuals named as Defendants herein.

***B. Unauthorized Post-Hearing Orders and Fabrication of Judicial Authority***

91. Plaintiff alleges that on multiple dates, Mono County counsel, including Defendant Matthew Silver, and Receiver's counsel, including Defendants Neil Shaffer and Jarrod Ready, prepared and submitted proposed orders that materially deviated from the Court's oral rulings.

92. Plaintiff alleges the unauthorized insertions included expanded receiver powers (including lockout authority, post-foreclosure billing authority, control of rents, and restrictions on refinancing and sale), provisions affecting non-parties, and recording/lien authority that were never granted on the record.

93. Plaintiff alleges these drafts were transmitted to the Court ex parte and/or without proper service, were presented as "conforming" orders, and were signed.

94. Defendants then used the signed orders to deny Plaintiff access to her property and records, suppress competitive sale and refinance opportunities, and continue post-foreclosure billing.

95. Plaintiff alleges these altered orders conflicted with hearing transcripts and minute orders and were therefore void for lack of jurisdiction and due process.

96. Plaintiff alleges Mono County repeatedly engaged in unilateral rewriting of judicial findings, including by attaching rejected lis pendens documents behind otherwise valid court orders, thereby reintroducing title clouds that had been denied in open court.

97. Plaintiff alleges Mono County's manipulation of the lis pendens record was enhanced by similar misconduct regarding the preliminary injunction. Mono County's attorneys inserted language exceeding the Court's pronouncement, granting the County sweeping control over Plaintiff's ability to operate and imposing de facto adjudications of damages without trial.

98. Plaintiff alleges Defendant Christina A. Hickey sent a letter to the Court dated December 17, 2021, acknowledging they had "modified the language discussed at the hearing," reflecting that the County's counsel knowingly altered the Court's intended rulings.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

*C. Retaliatory Code Enforcement and Property Shutdown Through Misuse of Warrants*

99. Plaintiff alleges that shortly after Plaintiff filed a cross-complaint naming Defendant Criss and the County, Defendant Criss sought and obtained inspection warrants based on affidavits containing material misstatements and omissions.

100. Plaintiff alleges Criss obtained at least two warrants supported by false and exaggerated claims about the property's condition.

101. Plaintiff alleges these warrants and resulting reports misrepresented the state of the building, portrayed it as unsafe, and were used to justify red-tagging and other enforcement actions depriving Plaintiff of use and income from the property.

102. Plaintiff alleges this pattern of misuse of process and distortion of facts set the stage for later undervaluation and abandonment of the June Lake property in bankruptcy proceedings.

**D. Void Appointment of Receiver After Bankruptcy Filing and During Pending Appeal**

103. On October 10, 2024, Plaintiff filed a Chapter 11 bankruptcy petition at approximately 9:00 a.m.

104. Later the same day, Plaintiff attended a Superior Court hearing regarding appointment of a receiver. Plaintiff was muted and denied a meaningful opportunity to present objections.

105. Despite Plaintiff informing the Court and parties of the bankruptcy filing and requesting a continuance, the Court proceeded and appointed Defendant Richardson Griswold as receiver.

106. Plaintiff alleges the Superior Court lacked jurisdiction to appoint a receiver because of Plaintiff's bankruptcy filing and a related pending appeal.

107. Plaintiff alleges the written receivership order contained expansive powers materially different from what was discussed in open court, as confirmed by reporter's transcripts. Plaintiff alleges the Court was told the receiver's role would be limited to inspection and reporting, but the written order granted sweeping control.

108. Plaintiff alleges the receivership order was therefore void ab initio, and all actions taken under it were unauthorized.

109. Plaintiff alleges that shortly thereafter, Mono County filed a motion to lift the bankruptcy automatic stay, falsely asserting the County had a real property interest when it did not.

32
COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

*E. Abandonment and Undervaluation of the June Lake Property by the Chapter 7 Trustee*

110. On or about April 8, 2025, the bankruptcy court held a hearing on Mono County's Motion to Lift the Automatic Stay.

111. At a prior hearing one week earlier, Plaintiff requested a continuance after Plaintiff's counsel abruptly withdrew and demanded $10,000 within 24 hours for replacement counsel. Plaintiff was unable to comply due to financial hardship and needed time to respond.

112. The Court responded harshly, stating that "a Chapter 11 requires money," and that Plaintiff would have to convert to Chapter 7. The Court granted only a one-week continuance.

113. Plaintiff alleges Plaintiff was not afforded a meaningful opportunity to respond or seek alternative relief. Plaintiff alleges this sequence paved the way for Mono County, the receiver, the lender, and related parties to act in concert to suppress the property's value and obstruct sale efforts.

114. At the April 8, 2025 hearing, Plaintiff presented a timely Opposition arguing Mono County held no valid property claim and that its reliance on the receiver appointment was jurisdictionally defective due to pending bankruptcy and state appellate proceedings.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

115. The judge openly admitted during the hearing that he had not read Plaintiff's opposition, and when Plaintiff asked if it would be considered, the judge responded sarcastically, "You don't really expect me to read it right now?" The Court then granted Mono County's motion.

116. Mono County submitted a proposed order containing material improper additions that exceeded and contradicted the Court's pronouncement. Both LC Equity Group and the Chapter 7 Trustee objected.

117. A second hearing was held shortly thereafter. The judge expressly admonished Mono County and receiver's counsel on the record, repeatedly stating that the only relief granted was lifting the stay—"nothing more."

118. Plaintiff alleges that despite this admonishment, Mono County and receiver's counsel continued submitting orders with improper additions. Plaintiff filed objections. The receiver corrected his order, but Mono County did not.

119. Plaintiff alleges the bankruptcy court nevertheless signed inconsistent orders, enabling Defendants to misuse the written orders in later proceedings.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

120. Plaintiff alleges that at or around the April 8 hearing, Plaintiff learned without prior notice that the Chapter 7 Trustee had already decided to abandon the June Lake property.

121. Plaintiff alleges that at the meeting of creditors, the Trustee stated the property was worth "no more than $1.2 million" and that secured debt exceeded that value.

122. Plaintiff alleges the Trustee later admitted he relied on representations made by Mono County's attorneys and the lender's counsel—adverse parties with direct interests in ongoing litigation.

123. Plaintiff alleges that the Trustee further stated he spoke to a June Lake realtor referred by Mono County's attorneys.

124. In the Trustee's Notice of Abandonment, the Trustee asserted the property's value was "no more than $1.2 million" and claimed the lender's lien exceeded $1.4 million.

125. Plaintiff alleges that in later filings, the Trustee changed his explanation, claiming a local Orange County realtor referred him to the June Lake realtor and that the June Lake realtor stated a valuation range of $1.2 to $1.5 million.

126. Plaintiff alleges the Trustee refused to identify the realtor or confirm qualifications in commercial valuation, and refused to consider Plaintiff's appraisals, broker letters, and offers.

127. Plaintiff alleges Plaintiff possessed multiple appraisals and broker valuations supporting fair market value of approximately $2.8 million, with several professionals opining the property could be sold quickly for $1.7 to $1.9 million.

128. Plaintiff alleges the Trustee never requested, acknowledged, or considered Plaintiff's evidence and conducted no independent investigation.

129. Plaintiff alleges the Trustee's abandonment decision, executed without independent valuation and while ignoring formal offers, violated fiduciary duties and enabled foreclosure under false pretenses.

**F. Collusion and Fraudulent Proof of Claim by the Lender (LC Equity Group)**

130. Plaintiff alleges that prior to Plaintiff's bankruptcy filing, LC Equity Group and its investors agreed to accept a reduced payoff of approximately $950,000.

131. Plaintiff alleges this agreement took into account prior interest payments, including a lump sum exceeding $60,000, and reflected the parties' mutual understanding that Plaintiff would continue defending

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

against Mono County's enforcement campaign, which also protected LC Equity's secured interest.

132. Plaintiff alleges LC Equity represented that interest would not accrue during ongoing litigation, and that LC Equity would not foreclose during that period.

133. Plaintiff alleges LC Equity repeatedly represented that material decisions required investor approval, and that the payoff amount had been approved by investors.

134. Plaintiff alleges LC Equity also attempted to assist Plaintiff in refinancing and offered to lend Plaintiff approximately $120,000 to close a refinancing transaction and make repairs, collateralized by another property, contingent on closing.

135. Plaintiff alleges that the June Lake property's fair market value was consistently and repeatedly established well above Defendants' later "$1.2 million" narrative. In or about 2016, Plaintiff obtained a professional appraisal valuing the property at approximately $1,690,000, and two independent commercial brokers confirmed that a listing price of approximately $1.69 million was appropriate. In or about 2023, Plaintiff obtained another appraisal valuing the property at approximately $2,300,000. In late 2024 and early 2025, Plaintiff obtained two additional

independent appraisals within months of each other, both valuing the property at approximately $2,800,000.

136. Plaintiff alleges this arrangement reflected LC Equity's recognition that Mono County's interference had made traditional financing unavailable and that LC Equity was working cooperatively with Plaintiff rather than pursuing default.

137. Plaintiff alleges that at all relevant times, LC Equity was aware Plaintiff could not afford loan payments because Mono County's conduct impaired title, blocked operations, and rendered the property unfinanceable.

138. Plaintiff alleges that in May 2023, a prospective buyer who spoke to Mono County's attorney and Defendant Criss wrote Plaintiff indicating that County actors represented the property could not be rented and was subject to litigation, and that the buyer was advised to "stay clear" of the situation.

139. Plaintiff alleges that despite years of cooperative conduct, LC Equity reversed course after Plaintiff refused to agree to additional terms and accelerated the payoff by asserting an inflated Proof of Claim exceeding $1.4 million.

140. Plaintiff alleges the inflated Proof of Claim included interest previously waived and disregarded Plaintiff's payments and protective actions.

141. Plaintiff alleges the Proof of Claim was deliberately inflated and timed to align with the Trustee's abandonment decision to create a false appearance of negative equity.

142. Plaintiff alleges that Plaintiff formally objected to LC Equity's Proof of Claim in the bankruptcy proceedings, identifying that the claim was materially inflated and included sums that had been waived, paid, or were otherwise not owed. Plaintiff alleges that LC Equity did not file any response to Plaintiff's objection, and did not produce competent evidence establishing the validity of the inflated amount, yet continued to rely on the inflated claim in further proceedings and communications to support the false "no equity" narrative and justify foreclosure.

143. Plaintiff alleges the absence of any response from LC Equity Group, and that the claim was in bad faith.

144. Plaintiff alleges that shortly thereafter, the property was sold at a nonjudicial foreclosure sale to LC Equity's investor beneficiaries and/or their agent, through a credit bid and trustee's deed upon sale. Plaintiff alleges the sale was conducted in a manner designed to conceal the true

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

value of the property, suppress competitive bidding, and prevent Plaintiff from exercising lawful options to cure, refinance, or sell.

145. Plaintiff alleges that documents later produced by LC Equity reflect that the property was effectively acquired by the lender and/or its investor beneficiaries for approximately $949,000—an amount within approximately $1,000 of the payoff figure Plaintiff had been promised would remain fixed at approximately $950,000 while Plaintiff continued defending against Mono County. Plaintiff alleges this confirms that Defendants engineered the foreclosure to capture the property at the same payoff amount previously promised, while simultaneously inflating the claimed debt in court filings to justify abandonment, "no equity," and foreclosure.

146. Plaintiff alleges Plaintiff did not receive statutory notice and first learned of the sale from a third party.

147. Plaintiff alleges that after learning of a scheduled sale, Plaintiff filed a Chapter 13 bankruptcy petition on May 27, 2025.

148. Plaintiff alleges LC Equity filed a motion to dismiss the Chapter 13 case accompanied by an ex parte motion to shorten time.

149. Plaintiff alleges Plaintiff received notice late on Friday, May 30, 2025, leaving only one business day to respond before the hearing on June 3, 2025.

150. Plaintiff alleges that despite Plaintiff's pro se status and the compressed timeline, the court denied Plaintiff's request for continuance and granted the motion to dismiss.

151. Plaintiff alleges Plaintiff attempted to raise valuation concerns, abandonment issues, and conflicts, but was denied a fair opportunity to present evidence.

152. Plaintiff alleges it was during the June 3, 2025 hearing that LC Equity's attorney, Defendant Brian Cronin, stated the property was scheduled to be auctioned the next day, June 4, 2025, and Plaintiff had not previously been informed of that sale date.

153. Plaintiff alleges the rushed dismissal deprived Plaintiff of due process and eliminated any meaningful opportunity to prevent the imminent foreclosure.

154. Plaintiff alleges that at a meeting of creditors conducted via remote conference, Plaintiff overheard an informal exchange between Defendant Cronin and the Trustee suggesting familiarity and coordination.

155. Plaintiff alleges that after Plaintiff asked about the exchange, Defendant Cronin remarked that he was the "proud owner of a bag of crap," referring to the June Lake property, then stated sarcastically "just kidding."

156. Plaintiff alleges the exchange, timing, and conduct reflect improper coordination between LC Equity, its counsel, the Trustee, Mono County, and the receiver.

**G. Receiver's Continued Conduct, Suppression of Sale, Lockout, and Post-Foreclosure Billing**

157. Plaintiff alleges that following abandonment and foreclosure, Defendant Griswold proceeded under a knowingly void receivership order and changed the locks on the building, denying Plaintiff access without notice and without allowing Plaintiff to retrieve personal property.

158. Plaintiff alleges the receiver allowed unauthorized occupancy and use of the property, including allowing guests to stay at the building, and the property grounds sustained damage.

159. Plaintiff alleges the receiver posted a red-tag without lawful investigation by licensed contractors and posted a notice referencing litigation in San Diego County where no such order existed.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

160. Plaintiff alleges the receiver continued issuing invoices to Plaintiff even after the purported foreclosure and sale, including charges unrelated to Plaintiff and connected to bankruptcy proceedings.

161. Plaintiff alleges Plaintiff prepared objections to receiver billing exceeding $33,000 in May 2025 and continuing to increase.

162. Plaintiff alleges Plaintiff was denied the opportunity to file objections because a Mono County court clerk refused filing, stating Plaintiff had been dismissed from the case and could no longer file.

163. Plaintiff alleges Plaintiff was not served with any dismissal order and would not have known Plaintiff was dismissed absent the clerk's refusal to file.

164. Plaintiff alleges the receiver interfered with Plaintiff's lawful efforts to sell the property before the foreclosure.

165. On or about April 10–11, 2025, Defendant Jarrod Ready contacted Plaintiff's licensed broker and demanded removal of Plaintiff's listing, attaching the receivership order and asserting that Plaintiff had "no authority to effect a sale."

166. Plaintiff alleges this was the first time Plaintiff had been provided a copy of the order and that it was received through Plaintiff's broker rather than through lawful service.

167. Plaintiff alleges the receivership order was void because it was entered after Plaintiff's bankruptcy filing and while jurisdiction was divested due to pending appellate proceedings.

168. Plaintiff alleges Plaintiff informed Defendant Ready that the order was void. Defendant Ready dismissed Plaintiff's concerns, repeatedly stating, "That's the order."

169. Plaintiff alleges the receiver's interference suppressed market activity and directly contributed to the eventual loss of the property.

**H. June Lake Public Utilities District ("PUD") Liens, Backdating, and Continued Post-Foreclosure Billing**

170. Plaintiff alleges that in or around Fall 2018, Plaintiff constructed a small accessory structure on the June Lake property ("Starlight"), under 200 square feet and exempt from permitting under applicable building codes.

171. Plaintiff alleges that after Plaintiff went to pay a water bill, a PUD supervisor confronted Plaintiff and demanded sewer connection requirements inconsistent with the structure's exempt status.

172. Plaintiff alleges that the following day, a code enforcement officer arrived, was visibly upset, and red-tagged the structure. Plaintiff was not offered a hearing or due process.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

173. Plaintiff alleges that in 2024, the structure disappeared from the property. Plaintiff was never served with a demolition notice and no County official admitted responsibility.

174. Plaintiff alleges that in 2018, Plaintiff refinanced the June Lake property and obtained a preliminary title report showing no outstanding PUD liens at that time.

175. Plaintiff later discovered two liens recorded by the June Lake PUD that had not appeared in prior title searches.

176. Plaintiff alleges the PUD admitted it routinely records liens when bills are paid late, without notice, hearing, or court order.

177. Plaintiff alleges that one lien was dated 2016 but did not appear on the 2018 refinance title report, indicating it was backdated or recorded later with a retroactive date.

178. Plaintiff alleges that such backdating could not occur without cooperation or negligence of the Mono County Recorder's Office.

179. Plaintiff alleges that over time, the PUD inflated bills, added charges to bills that were already paid, and continued billing Plaintiff even after the purported foreclosure.

*I. Mono County's Special Tax Scheme, Duplicative Assessments, and Arbitrary Increases*

180. Plaintiff alleges that since assuming control of the June Lake property in 2010 and obtaining title in 2012, Mono County imposed recurring "special tax" bills not based on ad valorem assessment, but on estimated values of personal property within the building.

181. Plaintiff alleges these special tax charges increased dramatically over time, tripled without explanation, and were billed repeatedly against Plaintiff and the defendant businesses for overlapping periods.

182. Plaintiff alleges the County issued duplicative and conflicting bills, creating confusion, increasing risk of lien and penalty, and fabricating the appearance of mismanagement.

183. Plaintiff alleges that despite repeated inquiries, Mono County refused to provide any lawful explanation or accounting of how the charges were calculated or what authority supported them.

184. Plaintiff alleges the County's conduct violated Plaintiff's procedural due process rights and appears to violate California Constitution Article XIII A and Article XIII D (Propositions 13 and 218), including notice and protest requirements for property-related assessments.

185. Plaintiff alleges that even after the purported foreclosure and sale, Plaintiff continues receiving tax bills from Mono County and invoices

from the PUD, and the receiver continues billing Plaintiff—confirming that Defendants continue treating Plaintiff as the owner and financial target.

### J. Judicial Misconduct, Improper Orders, and Denial of Due Process in Bankruptcy Proceedings

186. Plaintiff filed a Motion to Vacate the Order of Abandonment and Set Aside the Sale. When Plaintiff appeared for the scheduled hearing, Plaintiff was informed the Court had already ruled the day before without oral argument, notice, or a hearing on the merits.

187. Plaintiff alleges the Court's ruling ignored substantial evidence Plaintiff submitted, including valuation evidence directly contradicting the abandonment rationale.

188. Plaintiff alleges that at the Chapter 13 dismissal hearing on June 3, 2025, the judge refused to hear Plaintiff's objections, accepted unsupported 7tatements from Trustee's counsel without scrutiny, and issued a ruling without factual findings on valuation or legitimacy of the lender's claim.

189. Plaintiff alleges the judge stated he could not imagine the property would have been abandoned if the value were different than $1.2 million, demonstrating refusal to consider Plaintiff's evidence.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

190. Plaintiff alleges Mono County attorneys repeatedly submitted proposed orders with unauthorized additions, and in at least one instance, transmitted a letter and order directly to the judge in ex parte fashion stating they modified language "to comply with County codes," even though the Court had rejected such language in open proceedings.

191. Plaintiff alleges the judiciary's repeated acceptance of altered orders, refusal to enforce oral rulings, and silent endorsement of misleading filings reflects a breakdown in structural safeguards and deprived Plaintiff of meaningful access to justice.

### K. District Attorney's Misuse of Invalid Orders and Prolonged Prosecution

192. Plaintiff alleges that on a date to be confirmed, the Mono County District Attorney's Office filed a misdemeanor criminal complaint against Plaintiff alleging violation of the December 16, 2021 order.

193. Plaintiff alleges the order was invalid from inception because Mono County's attorneys improperly attached extraneous materials to it, rendering it void.

194. Plaintiff alleges the order was temporary in nature, not permanent, as confirmed by the Court's own statements.

195. Plaintiff alleges Plaintiff retained counsel for part of the criminal case but later filed a motion to dismiss identifying multiple grounds, including invalidity of the underlying order and absence of permanent injunctive provisions.

196. Plaintiff alleges the criminal court refused to address substantive issues.

197. Plaintiff alleges the District Attorney allowed the case to proceed for more than two years despite knowledge, or duty to know, that the underlying order was void and unenforceable.

198. Plaintiff alleges the prosecution caused severe emotional distress, financial expense, reputational damage, and diversion of resources from Plaintiff's defense of property rights.

199. Plaintiff alleges the District Attorney made a settlement offer conditioned on a guilty plea and required Plaintiff to "fix and correct" alleged building issues as a condition of settlement, using the criminal case as leverage.

200. Plaintiff alleges the District Attorney also filed a felony case against Plaintiff's daughter based on false allegations of document tampering related to court records.

201. Plaintiff alleges Plaintiff's daughter entered a guilty plea under coercion and fear of custody consequences in separate proceedings.

202. Plaintiff alleges that in that case, an investigator disclosed that the same judge presiding over Plaintiff's civil and criminal matters was expected to be an "important witness," reflecting an intolerable conflict of interest.

203. Plaintiff alleges Plaintiff consistently objected to Mono County's ability to provide a fair hearing and that the entanglement of civil enforcement and criminal prosecution confirms a coordinated effort to compel compliance and suppress review.

204. Plaintiff alleges the misdemeanor case was ultimately dismissed under Penal Code § 1385, without findings regarding invalidity of the order.

205. Plaintiff alleges the dismissal without such findings was intended to shield the District Attorney from accountability for filing and maintaining a baseless prosecution.

***L. No Merits Adjudication; Procedural Exclusion; and Independent Constitutional Injury***

206. Plaintiff is informed and believes, and thereon alleges, that Defendants will contend this action is barred by res judicata, collateral estoppel, or related preclusion doctrines based on the Mono County Superior Court proceedings.

207. Plaintiff alleges such defenses do not apply. Plaintiff was deprived of any meaningful opportunity to litigate the merits of her constitutional and statutory claims, including because she was not properly served with key pleadings and motions, was repeatedly denied a fair opportunity to be heard, and was excluded from meaningful participation through procedural obstruction and the use of void and fraudulently altered post-hearing orders.

208. Plaintiff further alleges that the underlying state proceedings did not result in any final judgment on the merits adjudicating Plaintiff's federal constitutional claims. Plaintiff alleges the claims herein arise from an independent pattern of misconduct—including fraud on the court, deprivation of property without due process, and abuse of legal process under color of state law—rather than a request for this Court to sit as an appellate tribunal over state court rulings.

209. Plaintiff alleges that orders obtained through fraud, lack of jurisdiction, or denial of due process are void and cannot support preclusion.

### M. Damages and Ongoing Harm

210. As a direct and proximate result of Defendants' conduct, Plaintiff suffered substantial damages, including but not limited to: loss of access to and use of the June Lake property valued at approximately $2.8 million; loss

of annual business income estimated at approximately $250,000 per year; destruction, disappearance, or damage to personal belongings and business records located inside the building; physical damage to the structure and fixtures during unauthorized occupancy; litigation costs; emotional distress; and consequential losses.

211. Plaintiff alleges Defendants' conduct is ongoing. Plaintiff continues to receive bills and collection demands for taxes, utilities, and receivership charges even after Defendants claim Plaintiff was foreclosed out of ownership, reflecting continued targeting and continued deprivation of property and rights.

a. Plaintiff and County of Mono litigated in Mono County Superior Court through approximately June 2025. Plaintiff continued to participate in the action and to respond to ongoing Receiver billing and related proceedings affecting Plaintiff's property, finances, and legal rights.

b. Plaintiff was never served with any notice, motion, or order informing her that she had been dismissed as a party. Plaintiff first learned of the purported dismissal only after she prepared a written objection to the Receiver's billing and attempted to file it with the court.

c. At the clerk's office, Plaintiff was refused filing and was told she could not file because she had been "dismissed" from the case. Plaintiff had

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

no prior notice of any dismissal and no opportunity to be heard before her party status was removed or used to deny her access to the court's filing process.

d. Plaintiff thereafter obtained the dismissal documentation only after the clerk's refusal. This sequence deprived Plaintiff of timely notice and a meaningful opportunity to challenge Receiver billing and other ongoing actions undertaken under color of Superior Court process.

**Notice Regarding Exhibits**

212. Plaintiff will submit supporting exhibits under separate cover. Such exhibits will correspond to specific paragraphs of this Complaint and will include, without limitation, certified court transcripts, written correspondence, billing and tax records, title reports, recorded documents, and other materials substantiating the allegations herein.

## IV. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Violation of Civil Rights — 42 U.S.C. § 1983; Municipal Liability (Monell) (County of Mono) (Procedural Due Process, Substantive Due Process, Equal Protection, and Fourth Amendment Violations)**

*Against: County of Mono; LC Equity Group, Inc.; its individual investors (sued herein as DOES 1–25 until identified by name); Receiver Richardson*

*Griswold; Matthew Silver; Jarrod Ready; Neil Shaffer; Civica Law Group, APC; Shulman Bastian Friedman & Bui LLP; and DOES 26–50, inclusive.*

213. Plaintiff realleges and incorporates by reference Paragraphs 1 through 211 of this Complaint, including the Statement of Facts and all exhibits referenced therein, as though fully set forth herein.

214. 42 U.S.C. § 1983 provides a civil remedy against any person who, under color of state law, deprives another of rights secured by the United States Constitution and laws. *West v. Atkins* (1988) 487 U.S. 42, 48.

215. A defendant acts "under color of state law" when the defendant is a state or municipal actor, a person exercising judicially delegated authority, or a private party who is a willful participant in joint action with the State or its agents. *Dennis v. Sparks* (1980) 449 U.S. 24, 27–28; *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002).

216. County of Mono, through its officers, agents, employees, and counsel (including Defendant Matthew Silver and Defendant Civica Law Group, APC), acted under color of state law at all relevant times.

217. Defendant Richardson Griswold acted under color of state law at all relevant times because he exercised judicially delegated authority as a court-appointed receiver under California Code of Civil Procedure §§ 564

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

and 568, and he exercised coercive governmental power over Plaintiff's property and business.

218. Plaintiff is informed and believes, and on that basis alleges, that Defendants LC Equity Group, Inc., its counsel, and its individual investors (DOES 125), as well as Defendants Shulman, Shulman Bastian Friedman & Bui LLP, Ready, Shaffer, and other private defendants, acted under color of state law because they were willful participants in joint action with County actors and judicially delegated actors, including by drafting, requesting, transmitting, enforcing, and exploiting void and unauthorized orders, liens, lockouts, and enforcement actions to seize, control, and commercially exploit Plaintiff's property.

219. At all relevant times, Defendants acted intentionally, knowingly, and in concert, and their conduct was the proximate cause of the injuries alleged herein.

### A. Monell Liability — County of Mono

220. County of Mono is liable for the constitutional violations alleged herein under *Monell v. Dep't of Soc. Servs.* (1978) 436 U.S. 658, because Plaintiff's injuries were caused by official policies, customs, and practices of the County, by failures to train and supervise amounting to deliberate

indifference, and by ratification of unconstitutional conduct by County final policymakers.

221. Plaintiff is informed and believes, and on that basis alleges, that the County's final policymakers—including policymakers within County Counsel, County enforcement leadership, and the County Board of Supervisors—had knowledge of the practices alleged herein, approved them, directed them, failed to correct them, and thereby ratified them.

222. The County maintained and enforced a persistent and widespread custom and practice of preparing, circulating, and submitting proposed court orders that materially exceeded the court's oral rulings and/or contained powers never granted on the record, including but not limited to expanded receivership authority, post-foreclosure billing authority, lockout authority, and restrictions affecting non-parties.

223. The County further maintained a persistent and widespread custom and practice of using such altered or nonconforming proposed orders as operative authority to seize and control Plaintiff's property and business, without lawful notice, without a meaningful opportunity to be heard, and in violation of basic constitutional requirements.

224. The County maintained and enforced a custom and practice of maintaining, recording, and leveraging liens, encumbrances, and lis-

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

pendens-type instruments even after expungement and/or in the absence of lawful authority, thereby clouding title, deterring refinancing and market sale, and predetermining litigation outcomes without due process.

225. The County maintained and enforced a custom and practice of seeking overbroad or ex parte inspection warrants without notice to Plaintiff while civil negotiations were ongoing, and then using inspection results and/or reports as a pretext to escalate enforcement, red-tagging, liens, penalties, and receivership relief.

226. The County maintained and enforced a custom and practice of escalating enforcement and punitive per-day penalties based on unverified and opaque TOT estimation methods and enforcement mechanisms, without adequate5notice, without meaningful explanation, and without a fair opportunity to contest the basis of the assessments.

227. The County maintained and enforced a custom and practice of pursuing enforcement actions, receivership relief, and coercive deprivations of property during periods when jurisdiction was divested by appeal under California Code of Civil Procedure § 916, and/or during periods when the automatic bankruptcy stay was operative under 11 U.S.C. § 362(a), and of continuing to rely on void orders entered without jurisdiction.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

228. The County failed to train and supervise County Counsel attorneys, compliance/code enforcement personnel, and other agents regarding core constitutional requirements, including due process notice and hearing requirements, the limits of judicially delegated authority, restrictions on enforcement during appeal and bankruptcy stay, and constitutional constraints on seizure and deprivation of property.

229. The County's failure to train and supervise was undertaken with deliberate indifference to the obvious risk of constitutional violations, because the constraints at issue were basic, well-established, and repeatedly implicated by Plaintiff's objections, filings, and appeals.

230. The foregoing policies, customs, practices, failures to train, and ratification were the moving force behind Plaintiff's injuries, including the loss of real property, loss of business operations and income, loss of personal property and records, and deprivation of constitutional rights.

**B. Inspection Warrant, False Reports, and Expansion Beyond the Warrant's Scope (Criss / DOE Officer / Compliance Division)**

231. Plaintiff is informed and believes, and on that basis alleges, that while settlement discussions and civil negotiations were ongoing, Mono County sought and obtained an inspection warrant without notice to Plaintiff.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

232. After the court signed the warrant, Plaintiff appeared ex parte and the court expressly limited execution of the warrant to a non-destructive "walkthrough," and not destructive testing or invasive inspection.

233. On the walkthrough date, Defendant Nick Criss and a DOE Code Enforcement Officer appeared and executed the inspection warrant.

234. Plaintiff alleges that no functional testing of systems was performed during the walkthrough, including but not limited to the wall heaters.

235 Plaintiff alleges that at Criss's request, Plaintiff attempted to light wall heater but could not locate a lighter, and neither officer had one.

236. Plaintiff alleges that despite the lack of testing and the court's express limitations on the scope of the inspection, Criss and/or the DOE officer later generated, approved, or relied upon inspection reports stating, among other things, that wall heaters "did not work," that the roof leaked, and that various unsafe conditions existed.

237. Plaintiff alleges those statements were false, exaggerated, and/or unsupported by the limited walkthrough actually performed, and were contradicted by subsequent observations and evidence.

238. The County used these inspection reports to escalate enforcement, red-tagging, liens, penalties, and receivership relief, and to influence subsequent proceedings affecting Plaintiff's property rights.

239. Plaintiff alleges that the foregoing conduct constituted an unlawful expansion beyond the scope of the court's narrowed warrant, and an unreasonable seizure and deprivation of property interests under the Fourth and Fourteenth Amendments.

240. Plaintiff alleges that the Compliance Division maintained and enforced a policy, custom, or practice of: (a) seeking overbroad or ex parte inspection warrants without notice; (b) generating or approving inspection reports that omitted exculpatory observations and overstated hazards; and (c) using such reports as a pretext to justify red-tagging, liens, penalties, and coercive receivership relief.

241. Plaintiff alleges that the foregoing policy, custom, or practice was promulgated, directed, and/or ratified by County final policymakers within County Counsel and the Compliance Division.

### C. Constitutional Rights Violated

### 1. Procedural Due Process (Fourteenth Amendment)

242. Plaintiff had clearly established property interests protected by the Fourteenth Amendment, including ownership and possessory interests in

---

real property, business operations, personal property, and the right to meaningful access to courts and fair procedures.

243. Defendants deprived Plaintiff of these protected interests without constitutionally adequate notice and without a meaningful opportunity to be heard, including but not limited to: (i) submitting and enforcing nonconforming and unauthorized proposed orders; (ii) recording and maintaining liens and encumbrances contrary to judicial rulings; (iii) excluding Plaintiff from meaningful participation in proceedings; (iv) refusing to accept, file, or consider timely objections and filings; and (v) enforcing coercive deprivations of property during appeal and bankruptcy stay periods.

244. The risk of erroneous deprivation was extreme, the private interest affected was substantial, and the government interest did not justify the denial of process, rendering Defendants' conduct constitutionally defective under *Mathews v. Eldridge* (1976) 424 U.S. 319.

**2. Substantive Due Process (Fourteenth Amendment)**

245. Defendants engaged in arbitrary, oppressive, and conscience-shocking conduct, including the seizure and control of Plaintiff's property and business under void and unauthorized authority; the lockout and exclusion of Plaintiff from her own building and business; the destruction,

concealment, and/or loss of Plaintiff's personal property and legal and business records; and the weaponization of code enforcement and criminal process as leverage in civil disputes.

246. Defendants' conduct was not a good-faith exercise of governmental power, but instead constituted abuse of authority designed to deprive Plaintiff of property, suppress her ability to refinance or sell, and predetermine litigation outcomes.

247. Defendants' conduct violated substantive due process under *Cnty. of Sacramento v. Lewis* (1998) 523 U.S. 833.

### 3. Equal Protection (Fourteenth Amendment)

248. Plaintiff was intentionally treated differently from similarly situated property owners and business operators.

249. Plaintiff is informed and believes, and on that basis alleges, that Defendants selectively enforced code and tax penalties, imposed duplicative or escalating liens and assessments without notice, continued post-foreclosure billing, and escalated enforcement mechanisms in a manner not applied to similarly situated owners.

250. Defendants lacked any rational basis for the differential treatment, and the differential treatment was motivated by animus, retaliation, and an intent to force Plaintiff's dispossession.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

251. Defendants' conduct violated the Equal Protection Clause under *Village of Willowbrook v. Olech* (2000) 528 U.S. 562.

**4. Unreasonable Seizure (Fourth Amendment)**

252. Plaintiff alleges that Defendants effected a lockout, seizure, and control of Plaintiff's building, business, and contents without lawful authority, without exigent circumstances, and without a valid court order consistent with due process.

253. Plaintiff alleges that Defendants permitted third-party use and commercial exploitation of the property and its contents under color of void or unauthorized orders.

254. Plaintiff alleges that Defendants' conduct constituted an unreasonable seizure under *Soldal v. Cook Cnty.* (1992) 506 U.S. 56.

**D. Causation and Injury**

255. Defendants' actions were the direct and proximate cause of Plaintiff's injuries, including but not limited to: loss of real property, loss of business operations and income, loss of personal property and irreplaceable items, loss of records necessary to defend herself in multiple proceedings, severe emotional distress, reputational harm, and financial devastation.

256. Plaintiff's damages include, but are not limited to: (i) loss of real property with fair market value estimated at approximately $2.8 million; (ii)

lost annual business income of approximately $250,000 for multiple years; (iii) out-of-pocket costs, litigation expenses, and forced administrative costs; (iv) loss of personal property and irreplaceable sentimental property; and (v) severe emotional distress.

### E. Anticipated Defenses (Pled for Clarity and to Prevent Dismissal by Mischaracterization)

257. Plaintiff alleges that the litigation privilege (Cal. Civ. Code § 47(b)) does not bar this Cause of Action because the gravamen of Plaintiff's claims is not protected communicative conduct, but rather non-communicative misconduct, including wrongful lockout, seizure, exclusion, retention, and conversion of property, and other acts effectuating dispossession under color of law. (Brown v. Kennard (2001) 94 Cal.App.4th 40, 44–45; Rusheen v. Cohen (2006) 37 Cal.4th 1048, 1058–1060.) Separately, Plaintiff alleges that Defendants' acts were undertaken pursuant to orders entered without jurisdiction and/or in violation of the automatic bankruptcy stay, and that acts taken in violation of the stay are void. (11 U.S.C. § 362; In re Schwartz (9th Cir. 1992) 954 F.2d 569, 571; In re Gruntz (9th Cir. 2000) 202 F.3d 1074, 1082–83 (en banc).)

258 Plaintiff alleges that judicial or quasi-judicial immunity does not bar this Cause of Action because the acts alleged were undertaken outside

lawful jurisdiction, under void authority, and/or in the execution of unconstitutional customs and policies, and because Monell liability is not subject to judicial immunity defenses.

259. Plaintiff alleges that bankruptcy overlap, preemption, or related doctrines do not bar this Cause of Action where the conduct alleged includes enforcement actions taken during the automatic stay and during divested jurisdiction, which are void ab initio. See In re Schwartz, 954 F.2d 569, 571 (9th Cir. 1992).

**F. Relief**

260. As a direct and proximate result of the foregoing, Plaintiff is entitled to judgment against Defendants, jointly and severally, for compensatory damages, and against the non-municipal defendants for punitive damages.

261. Plaintiff is further entitled to declaratory relief declaring void and unconstitutional the altered and unauthorized orders, enforcement actions taken during divested jurisdiction and bankruptcy stay, the lockout and seizure, the use l of false inspection reports, the abandonment and foreclosure process as alleged, and all continuing post-foreclosure enforcement based on void authority.

262. Plaintiff is further entitled to injunctive relief prohibiting Defendants from enforcing void orders and liens and requiring correction of public records to remove unconstitutional encumbrances and instruments clouding title.

263. Plaintiff is further entitled to attorneys' fees and costs under 42 U.S.C. § 1988.

264. Plaintiff is further entitled to such other and further relief as the Court deems just and proper.

## SECOND CAUSE OF ACTION

### Civil Rights Conspiracy — 42 U.S.C. § 1983

*(Against County of Mono; LC Equity Group, Inc.; LC Equity Investors sued as DOES; Richardson Griswold; Griswold Law, APC; Matthew Silver; Civica Law Group, APC; Neil Shaffer; Jarrod Ready; and DOES 1–100)*

265. Plaintiff realleges and incorporates by reference Paragraphs 1 through 264 of this Complaint as though fully set forth herein.

266. A conspiracy under 42 U.S.C. § 1983 exists where two or more persons agree or meet the minds to deprive a person of constitutional rights, commit one or more overt acts in furtherance of that agreement, and cause injury. *Gilbrook v. City of Westminster,* 177 F.3d 839, 856–57 (9th Cir. 1999).

267. At all relevant times, County of Mono and its agents acted under color of state law.

268. At all relevant times, Defendant Richardson Griswold acted under color of state law by virtue of his court-appointed receivership authority and by exercising coercive governmental power over Plaintiff's property.

269. Plaintiff is informed and believes, and on that basis alleges, that LC Equity Group, Inc., its investors (sued herein as DOES), and the private attorney defendants were willful participants in joint action with County officials and Receiver Griswold and therefore acted under color of law.

**Agreement and Meeting of the Minds**

270. Beginning no later than 2018 and continuing through foreclosure and post-sale enforcement, Defendants reached and carried out an agreement and common plan to deprive Plaintiff of her constitutional rights and to ensure permanent dispossession of her June Lake property.

271. The object of the conspiracy included:

a. Expanding receivership authority beyond what was granted on the record;

b. Securing and enforcing nonconforming or materially altered court orders;

c. Clouding title to prevent refinancing or competitive sale;

d. Suppressing or disregarding higher market valuations and bona fide offers;

e. Timing enforcement actions to coincide with procedural vulnerability;

f. Isolating Plaintiff from meaningful court participation; and

g. Ensuring foreclosure under conditions that prevented fair market recovery.

272. The agreement need not have been memorialized in writing; it is evidenced by coordinated conduct, parallel actions, shared objectives, and mutually reinforcing acts that would not have occurred independently.

**Overt Acts in Furtherance**

273. In furtherance of the conspiracy, County counsel and Receiver's counsel drafted and circulated proposed receivership orders that materially expanded powers beyond oral rulings, including lockout authority, income seizure authority, and post-foreclosure billing authority.

274. Those expanded orders were transmitted to the court without adequate notice to Plaintiff and were thereafter invoked as operative authority to exclude Plaintiff from her property and business.

275. County officials and Receiver Griswold enforced and relied upon such expanded authority to seize operational control of the building and its contents.

276. LC Equity Group and its investors coordinated litigation and foreclosure strategy in reliance upon the receivership posture and enforcement climate created by County actions.

277. Defendants promoted and relied upon an artificially suppressed valuation narrative (approximately $1.2 million) to justify foreclosure posture and discourage refinancing, while higher valuations and offers were known or available.

278. Defendants maintained liens, encumbrances, and enforcement mechanisms that operated as a de facto lis pendens to deter investors and block market competition.

279. Defendants timed foreclosure actions to coincide with procedural events that left Plaintiff financially and procedurally exposed.

280. Defendants continued post-foreclosure billing and enforcement under color of receivership authority to exhaust Plaintiff's resources and deter continued litigation.

*Resulting Constitutional Deprivations*

281. As a direct result of the conspiracy, Plaintiff was deprived of procedural due process, including meaningful notice and opportunity to be heard before seizure and dispossession.

282. Plaintiff was deprived of substantive due process through arbitrary and conscience-shocking misuse of governmental mechanisms to predetermine loss of property.

283. Plaintiff's property was seized and controlled without lawful constitutional justification in violation of the Fourth and Fourteenth Amendments.

284. Plaintiff was denied equal protection through selective enforcement mechanisms not applied to similarly situated owners.

285. The conspiracy was a moving force behind the permanent loss of Plaintiff's real property and business interests.

*Causation and Damages*

286. As a foreseeable and direct result of Defendants' agreement and overt acts, Plaintiff suffered:

    a. Loss of real property valued at approximately $2.8 million;

    b. Loss of annual business income of approximately $250,000;

    c. Loss of personal property and business records;

d. Severe financial hardship;

e. Emotional distress; and

f. Litigation expenses incurred to resist unconstitutional conduct.

**Relief**

287. Plaintiff is entitled to compensatory damages against all Defendants, jointly and severally.

288. Plaintiff is entitled to punitive damages against the individual and private defendants for willful, malicious, and oppressive conduct.

289. Plaintiff is entitled to declaratory relief that the coordinated conduct described herein violated her constitutional rights.

290. Plaintiff is entitled to injunctive relief prohibiting further enforcement of void authority and requiring correction of public records to remove unconstitutional encumbrances.

291. Plaintiff is entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

292. Plaintiff is entitled to such further relief as the Court deems just and proper.

## THIRD CAUSE OF ACTION

### Fraud – Intentional Misrepresentation, Concealment, and Promissory Fraud

*(Against LC Equity Group, Inc.; LC Equity Investor Defendants sued as DOES; County of Mono; Richardson Griswold; Griswold Law, APC; Matthew Silver; Civica Law Group, APC; Neil Shaffer; Jarrod Ready; and DOES 1–100)*

293. Plaintiff realleges and incorporates by reference Paragraphs 1 through 292 of this Complaint as though fully set forth herein.

**Legal Standard**

294. Under California law, fraud requires: (1) a misrepresentation (false representation, concealment, or nondisclosure where a duty to disclose exists); (2) knowledge of falsity; (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damage. Lazar v. Superior Court, 12 Cal.4th 631, 638 (1996).

295. Promissory fraud arises where a promise is made without intent to perform. Tenzer v. Superscope, Inc., 39 Cal.3d 18, 30–31 (1985).

296. Court-appointed receivers and attorneys acting in fiduciary or official capacities owe duties of candor and full disclosure regarding material facts within their knowledge.

*Particularized Misrepresentations*

*1. False Valuation Narrative (2024–2025)*

297. Beginning no later than late 2024 and continuing through foreclosure in 2025, Defendants LC Equity Group, Inc., its investor agents, Receiver Griswold (through counsel), and County counsel repeatedly represented in court filings, hearings, payoff communications, and direct correspondence that the June Lake property was worth no more than approximately $1.2 million.

298. At the time those representations were made, Defendants possessed written appraisals reflecting values as high as $2.8 million and were aware of bona fide offers exceeding $1.8 million.

299. Defendants failed to disclose those higher valuations and offers when advancing the $1.2 million narrative.

300. The depressed valuation narrative was used to support abandonment posture, discourage refinancing, justify foreclosure timing, and influence court rulings.

*2. Suppression of Higher Offers and Appraisals*

301. Receiver Griswold and LC Equity, acting through counsel, withheld material information concerning higher offers and appraisals from court submissions and from Plaintiff.

302. Those omissions were material because market value was central to foreclosure posture, equity determination, refinancing viability, and judicial decision-making.

### 3. Promissory Fraud — Interest Non-Accrual Representation (2023–2024)

303. During 2023 and 2024, LC Equity and its authorized agents represented to Plaintiff that interest would not accrue during enforcement delays attributable to County litigation and related proceedings.

304. Those representations were made orally and in writing to induce Plaintiff to refrain from immediate refinance or liquidation.

305. After Plaintiff relied on those assurances, LC Equity included the previously waived or promised-to-be-waived interest in payoff calculations and court communications.

306. Plaintiff is informed and believes, and on that basis alleges, that at the time the non-accrual representations were made, LC Equity did not intend to honor them.

### 4. Inflated and Misleading Payoff Demands (2025)

307. In Spring 2025, LC Equity and/or its counsel transmitted payoff statements via U.S. Mail and email that:

a. Included interest previously represented as non-accruing;

b. Included sums tied to disputed or void liens; and

c. Included charges not authorized by operative agreements.

308. Those payoff demands materially overstated the amount required to redeem or refinance the property.

309. Lenders and prospective buyers relied on those payoff statements and withdrew or declined to proceed.

### 5. Misrepresentation of Judicial Authority and Order Scope

310. County counsel and Receiver's counsel submitted proposed orders containing material powers not granted on the record, including expanded lockout authority, expanded receivership authority, and post-foreclosure billing authority.

311. T8ose proposed orders were represented as conforming to oral rulings.

312. Defendants then relied upon those orders as lawful authority in communications with law enforcement, lenders, title entities, and Plaintiff.

313. The representations regarding scope of authority were material and were made to induce compliance and deter challenge.

### 6. Listing Suppression and Market Interference (2025)

314. During early 2025, while Plaintiff had engaged a broker and was pursuing active marketing, the Receiver's office instructed removal of the listing and discouraged pending offers while asserting repair-based control.

315. At or about that time, Defendants referenced an inspection report dated May 14, 2025, but did not provide the report to Plaintiff to allow meaningful response.

316. The suppression of listing activity and withholding of material information foreseeably chilled market participation.

### 7. Jurisdictional and Authority Representations

317. During 2024 and 2025, Defendants sought and enforced orders during periods when jurisdiction was subject to appeal under California Code of Civil Procedure § 916 and during bankruptcy-related procedural posture, while representing or implying valid authority to proceed.

318. Those representations were material to courts, lenders, and third parties evaluating risk and authority.

### Knowledge of Falsity

319. Each Defendant knew the true facts or acted with reckless disregard for their truth, including knowledge of higher valuations, active offers, payoff math, and the scope of oral rulings.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

*Intent to Induce Reliance*

320. Defendants intended courts to rely on the depressed valuation narrative, intended lenders and buyers to withdraw based on payoff and authority representations, and intended Plaintiff to delay or abandon refinancing efforts.

*Justifiable Reliance*

321. Plaintiff justifiably relied on representations made by court-appointed officers, public counsel, and financial counterparties regarding valuation, authority, and payoff amounts.

322. Plaintiff's reliance included delaying transactions, refraining from certain challenges, preparing closings based on payoff figures, and restructuring financial decisions.

323. It was foreseeable and intended that third-party lenders and buyers would rely on payoff statements, title records, and authority representations.

*Damages*

324. As a direct and proximate result of Defendants' fraud, Plaintiff suffered:

a. Loss of real property valued at approximately $2.8 million;

b. Loss of annual business income of approximately $250,000;

c. Loss of personal property and business records;

d. Out-of-pocket expenses and litigation costs;

e. Severe emotional distress and reputational harm.

325. Defendants' conduct was malicious, oppressive, and fraudulent within the meaning of Civil Code § 3294, warranting punitive damages.

*Relief — Count III*

326. Plaintiff seeks compensatory damages according to proof.

327. Plaintiff seeks punitive damages pursuant to Civil Code § 3294.

328. Plaintiff seeks rescission or cancellation of transactions, liens, orders, and instruments procured through fraud.

329. Plaintiff seeks restitution and disgorgement of sums obtained through fraudulent payoff demands and enforcement mechanisms.

330. Plaintiff seeks declaratory relief that foreclosure and related enforcement actions were procured through fraud.

331. Plaintiff seeks costs of suit, attorneys' fees where authorized, and such further relief as the Court deems just and proper.

## FOURTH CAUSE OF ACTION

### Fraud – Intentional Misrepresentation, Concealment, and Fraudulent Inducement

*(Against: County of Mono; LC Equity Group, Inc.; LC Equity Investor*

*Defendants sued as DOES; Receiver Richardson Griswold; Neil Shaffer; Jarrod Ready; Griswold Law, APC; Matthew Silver; Civica Law Group, APC; and DOES 1–100)*

332. Plaintiff realleges and incorporates by reference Paragraphs 1 through 331 of this Complaint, including all general allegations, definitions, factual background, and allegations of joint conduct, as though fully set forth herein.

333. Under California law, fraud consists of: (1) misrepresentation (affirmative false statement, concealment, or nondisclosure where a duty to disclose exists); (2) knowledge of falsity; (3) intent to induce reliance; (4) justifiable reliance; and (5) damages. *Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638; *Engalla v. Permanente Med. Group, Inc.* (1997) 15 Cal.4th 951, 973–74; *LiMandri v. Judkins* (1997) 52 Cal.App.4th 326, 336–37.

334. Promissory fraud arises where a promise is made without intent to perform. *Tenzer v. Superscope, Inc.* (1985) 39 Cal.3d 18, 30–31.

335. This Cause of Action pleads affirmative misrepresentations, concealments, and fraudulent inducement. Omission-only theories are pleaded separately in the Tenth Cause of Action (Fraudulent Concealment).

Relief specifically targeting corruption of the judicial process is pleaded separately in the Twenty-Fourth Cause of Action (Fraud on the Court).

### C. Particularized Misrepresentations / Concealments (Rule 9(b))

336. Plaintiff alleges that Defendants made and/or participated in the following intentional misrepresentations and concealments, with the intent to induce Plaintiff and foreseeable third parties to act or refrain from acting, resulting in Plaintiff's dispossession of her property and related damages.

### 1. Uniform False Valuation Narrative (~$1.2M) (Late-2024–June 2025)

337. LC Equity (including through its agents and counsel), Receiver Griswold (including through Shaffer and Ready), and County counsel (including Matthew Silver and Civica Law Group, APC) represented orally, in filings, and in communications with lenders, buyers, and Plaintiff that the property was worth no more than approximately $1.2 million.

338. At the time those statements were made, Defendants possessed, had access to, and/or were aware of higher written appraisals reflecting values as high as approximately $2.8 million and bona fide offers exceeding $1.5 million, including offers near $2.0 million.

339. Defendants made the ~$1.2 million valuation narrative to create an artificial "no equity" posture, to justify foreclosure and enforcement, and to chill outside bidding and third-party financing.

### 2. Concealment of Higher Offers and Appraisals (2024–2025)

340. Defendants concealed from Plaintiff, from lenders and buyers, and from court submissions the existence of written and oral offers exceeding $1.5 million and higher appraisals, while simultaneously advancing the depressed valuation narrative.

336. The concealed information was material to the ability to refinance, market, sell, and preserve the property, and to judicial determinations regarding equity, necessity of foreclosure, and legitimacy of enforcement actions.

### 3. Promissory Fraud — Interest Non-Accrual (2023–2025)

341. LC Equity and its authorized agents promised Plaintiff, verbally and in writing, that interest would not accrue during enforcement delays attributable to County litigation and related proceedings.

342. Plaintiff alleges that LC Equity Group, Inc., through its managing agents including Patrick Roman and Brian [Getz/Cronin], negotiated and represented that while Plaintiff continued defending against Mono County's enforcement actions and while delays were attributable to the County's

conduct, the total payoff would not exceed approximately $950,000 (the "Payoff Cap Agreement").

343. During negotiations, LC Equity's representatives informed Plaintiff that the Payoff Cap Agreement required approval from LC Equity's investors. Thereafter, LC Equity's representatives affirmatively represented to Plaintiff that the investors had reviewed and approved the payoff cap arrangement.

344. Plaintiff drafted and executed a written version of the Payoff Cap Agreement at LC Equity's request. Consistent with LC Equity's practice, Plaintiff was required to sign documents that were not returned to her fully executed, including with respect to the Payoff Cap Agreement.

345. Plaintiff relied on LC Equity's representation that investor approval had been obtained, and on the existence of the Payoff Cap Agreement, by continuing litigation against Mono County, continuing efforts to refinance and preserve the property, and refraining from immediate liquidation or emergency legal relief.

346. Plaintiff is informed and believes, and on that basis alleges, that at the time LC Equity represented that investor approval had been obtained, Defendants either (a) had not obtained genuine approval; (b) had no intention

of honoring the payoff cap; or (c) intended to later inflate the payoff amount through interest and additional charges despite the agreed cap.

347. LC Equity breached and repudiated the Payoff Cap Agreement by later demanding payoff amounts materially exceeding the agreed cap, including through inclusion of interest and charges previously represented as waived or non-accruing, thereby obstructing third-party closings and facilitating foreclosure.

348. Despite that promise, LC Equity later included the very interest in payoff demands and related communications, inflating the debt and obstructing third-party transactions.

349. Plaintiff is informed and believes, and on that basis alleges, that LC Equity made the non-accrual promise without intent to perform and for the purpose of inducing Plaintiff to forbear from immediate sale, refinance, and litigation escalation while Defendants positioned for a controlled foreclosure.

### 4. Inflated and False Payoff Demands (Spring 2025)

350. LC Equity (through counsel) and Receiver-related counsel transmitted payoff letters and payoff statements by U.S. Mail and email that included: (a) interest promised not to accrue; (b) amounts tied to void, disputed, or unauthorized liens; and (c) unrelated fees.

351. These payoff demands inflated the amount required to close by hundreds of thousands of dollars and were intended to cause lenders and buyers to withdraw.

352. The withdrawal of lenders and buyers was a foreseeable and intended consequence that directly harmed Plaintiff.

**5. Misrepresentation of Judicial Authority / Unauthorized Order Language (Nov. 2024 onward)**

353. County counsel (Matthew Silver) and Receiver's counsel (Shaffer and Ready) submitted proposed orders containing material powers never granted on the record, including unilateral lockouts, expanded receiver authority, and post-foreclosure personal billing.

354. Defendants represented those proposed orders as conforming to the court's oral rulings.

355. Defendants then relied upon those orders in communications with Plaintiff, lenders, and title entities as though they constituted valid authority.

**6. Marketability and Sale Suppression — Broker Listing Removal (Early 2025)**

356. Receiver-related agents instructed Plaintiff's engaged broker to remove the listing and discouraged pending offers, including at least one

offer near $1.5 million, while simultaneously asserting that "repairs" and Receiver control were necessary for any sale.

357. Defendants made these representations and demands to suppress competitive bidding, depress value, and steer the property toward foreclosure under conditions favorable to LC Equity and its investors.

### 7. Jurisdictional and Authority Misstatements (2024–2025)

358. Defendants sought and enforced orders during periods of divested jurisdiction under California Code of Civil Procedure § 916 and during operative bankruptcy-related restrictions, while representing or implying valid authority.

359. These representations were made to maintain lockout, preserve billing posture, and clear a path to foreclosure and post-sale enforcement.

### 8. Withheld Inspection Report (May 14, 2025)

360. Defendants referenced and relied upon a May 14, 2025 inspection report to justify red-tagging, repairs, receivership control, and sale-related decisions, while withholding that report from Plaintiff.

361. The withholding of the report prevented meaningful rebuttal and was intended to reinforce a false narrative of condition, repair necessity, and sale posture.

### D. Knowledge of Falsity (Scienter)

362. Each Defendant acted with actual knowledge or reckless disregard for the truth, including knowledge of higher valuations, higher offers, payoff inflation mechanics, and the scope of oral rulings.

### E. Intent to Induce Reliance

363. Defendants intended that: (1) courts would rely on depressed valuation and authority narratives; (2) lenders and buyers would withdraw; and (3) Plaintiff would forbear from closing transactions or pursuing immediate relief.

### F. Justifiable Reliance

364. Plaintiff reasonably relied on statements made by court-appointed officers and attorneys, on the facial validity of submitted orders and recorded instruments, and on payoff figures provided for closings.

365. In reliance, Plaintiff delayed or redirected sale and refinance efforts, refrained from immediate writ relief on certain orders and instruments, and paid or prepared to pay charges presented as due.

366. It was foreseeable and intended that lenders and buyers would rely on payoff letters, title records, and attorney representations, causing them to withdraw and directly defeating Plaintiff's ability to close non-insider transactions.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

### G. Causation and Damages

367. Defendants' fraud was a substantial factor in causing Plaintiff's damages, including permanent loss of the June Lake property (FMV approximately $2.8 million), lost rental and business income (approximately $250,000 per year), loss of personal property and business records, out-of-pocket and litigation costs, severe emotional distress, reputational harm, and other consequential damages according to proof.

368. Punitive damages are warranted for malicious, oppressive, and fraudulent conduct pursuant to Civil Code § 3294, as to all non-municipal defendants and individual defendants as permitted by law.

### H. Relief Requested — Count IV

369. Plaintiff seeks: (1) compensatory damages according to proof; (2) punitive damages under Civil Code § 3294; (3) rescission and cancellation of transactions, liens, orders, and instruments procured by fraud to the extent authorized by law; (4) restitution and disgorgement of sums obtained through fraudulent demands; (5) declaratory relief that the foreclosure and any post-sale personal billing predicated on fraudulent submissions are void or unenforceable as to Plaintiff; (6) costs of suit and attorneys' fees where permitted; and (7) such other and further relief as the Court deems just and proper.

# FIFTH CAUSE OF ACTION

## Abuse of Process

*(Against All Defendants)*

370. Plaintiff realleges and incorporates by reference Paragraphs 1 through 369 of this Complaint, including all general allegations, definitions, and factual background, as though fully set forth herein.

**Legal Standard**

371. Under California law, abuse of process consists of:

(1) an ulterior motive in the use of judicial process; and

(2) a willful act in the use of that process not proper in the regular conduct of the proceeding. *(Templeton Feed & Grain v. Ralston Purina Co. (1969) 69 Cal.2d 461, 466; Clark Equipment Co. v. Wheat (1979) 92 Cal.App.3d 503, 524.)*

It is not the mere filing of an action that is wrongful, but the perversion of legitimate process into a tool for coercion, oppression, retaliation, or collateral advantage. *(Younger v. Solomon (1974) 38 Cal.App.3d 289, 297.)*

**Litigation Privilege Does Not Bar Claims Based on Non-Communicative Misue of Process**

372. The litigation privilege (Cal. Civ. Code § 47(b)) applies to communications made in judicial proceedings, but it does not bar claims

where the gravamen is non-communicative wrongful conduct, including wrongful seizure, lockout, exclusion, retention, conversion of property, or other acts effectuating dispossession. (Rusheen v. Cohen (2006) 37 Cal.4th 1048, 1058–1060; Brown v. Kennard (2001) 94 Cal.App.4th 40, 44–45.)

**Voidness of Acts Taken in Violation of the Automatic Stay**

373. Under federal bankruptcy law, 11 U.S.C. § 362(a) bars any action to enforce liens, take possession of property, or continue proceedings against a debtor without relief from the automatic stay. State court orders entered in violation of the automatic stay are void. *(In re Gruntz (9th Cir. 2000) 202 F.3d 1074, 1082–83.)*

### C. FACTUAL ALLEGATIONS

**Ulterior Purpose**

374. From at least 2021 through the June 2025 foreclosure and beyond, Defendants — including Mono County officials, LC Equity Group, Inc. and its investors, Receiver Richardson Griswold, and their respective counsel — knowingly weaponized judicial process to achieve unlawful objectives unrelated to the adjudication of any legitimate claim, including:

**Forced Dispossession for Insider Benefit.**

375. Defendants used civil, enforcement, and receivership processes to orchestrate the transfer of Plaintiff's June Lake property to an LC Equity

insider (its attorney) at a price far below fair market value, while creating procedural barriers to any legitimate third-party sale.

**Retaliation for Protected Petitioning Activity**

376. Defendants used judicial process to punish Plaintiff for exercising her constitutional right to petition, pursue appeals, challenge void orders, and expose government misconduct.

**Economic Attrition Through Serial and Overlapping Litigation.**

377. Defendants maintained overlapping and serial litigation in state civil court, state criminal court, and bankruptcy-related proceedings, timed and structured to drain Plaintiff's resources, impair her ability to defend herself, and force capitulation through exhaustion rather than adjudication.

**Double Recovery Through Tax Manipulation (Information and Belief).**

378. On information and belief, one or more Doe Investors took tax deductions, write-offs, or loss allocations based on the claimed loan default, while still seeking to recover the full face value of the loan through foreclosure and post-foreclosure billing, thereby creating an improper double recovery.

**Willful Acts Misusing Process**

**Submission of Unauthorized and Void Orders.**

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

379. County counsel (Matthew Silver) and the Receiver's attorneys, including Jarrod Ready and Neil Shaffer (and prior counsel), drafted and submitted proposed orders containing powers never granted on the record, including expanded receivership authority, post-foreclosure billing rights, and restrictions on Plaintiff's access to her property.

**Orders Entered Without Jurisdiction.**

380. Many such orders were entered after jurisdiction was divested by pending appeals (Cal. Code Civ. Proc. § 916) and during the federal bankruptcy automatic stay (11 U.S.C. § 362(a)), rendering them void ab initio.

**Recording and Maintaining Invalid Liens and Lis Pendens.**

381. Mono County recorded and maintained liens and lis pendens that had been ordered expunged, were void, or were otherwise unauthorized, for the purpose of clouding title, deterring lenders and buyers, and preventing Plaintiff from refinancing or selling the property.

**Misrepresentation of Property Value.**

382. LC Equity and the Receiver falsely represented the property's value as no more than $1.2 million, while concealing appraisals and valuations as high as $2.8 million and bona fide purchase offers at or above

$1.5 million, in order to justify foreclosure and suppress competitive bidding.

**Fraudulent Promise of Interest Non-Accrual.**

383. LC Equity and Doe Investors expressly promised Plaintiff — verbally and in writing — that no interest would accrue during enforcement delays caused by Mono County's civil actions, and Plaintiff reasonably relied on this promise in making strategic decisions.

**Later Imposition of Interest Contrary to Promise.**

384. Despite this promise, Defendants later imposed and attempted to collect interest for the same period they had promised to defer, inflating their claim and misleading courts, lenders, and Plaintiff.

**Fabrication of Inflated Payoff Demands.**

385. Defendants issued payoff demands including non-accruing interest, void lien amounts, and unrelated charges, ensuring that only LC Equity or its affiliates could close a sale.

**Strategic Manipulation of Bankruptcy Posture to Accelerate Foreclosure.**

386. LC Equity's attorney sought dismissal of bankruptcy protection, requested shortened time, and scheduled foreclosure activity in a manner

designed to preempt Plaintiff's defenses and preserve insider acquisition of the property.

**Post-Foreclosure Billing Without Authority.**

387. After the June 4, 2025 foreclosure, the Receiver and other Defendants billed Plaintiff for taxes, utilities, and Receiver fees under orders void for lack of jurisdiction, and at a time when Plaintiff was no longer the legal owner.

**Continued Billing in Violation of Stay and Appellate Jurisdiction.**

388. Such billing further violated the automatic stay and state appellate jurisdictional rules, and was not undertaken for any legitimate purpose of the underlying proceedings.

**Interference with Bona Fide Sale Efforts.**

389. The Receiver's firm contacted and instructed Plaintiff's engaged broker to "shut down" a pending $1.5 million offer that would have preserved equity and avoided foreclosure, directly benefiting the Receiver and LC Equity.

**Orchestrated Multi-Venue Litigation Pressure.**

390. Civil, criminal, and bankruptcy-related actions were strategically timed to create conflicting deadlines and procedural traps designed to induce default, procedural errors, and loss of rights by Plaintiff.

**Lack of Legitimate Purpose**

391. The foregoing acts were not undertaken to obtain lawful judicial relief. They were part of a coordinated scheme to:

a. Force a below-market transfer of property;

b. Punish and silence Plaintiff;

c. Extract fees and payments without lawful entitlement;

d. Create procedural traps to deprive Plaintiff of due process; and

e. Strip Plaintiff of constitutional protections under color of law.

392. Because these acts were taken without jurisdiction, for purposes unrelated to adjudicating a legitimate claim, and in violation of federal bankruptcy protections, the litigation privilege does not apply.

### D. CAUSATION AND DAMAGES

393. As a direct and proximate result of Defendants' abuse of process, Plaintiff has suffered, among other damages:

a. Loss of the June Lake property (FMV approximately $2.8 million);

b. Loss of annual business income (approximately $250,000 per year);

c. Loss of irreplaceable personal property and business records;

d. Severe emotional distress and physical harm;

e. Litigation expenses and depletion of assets; and

f. Reputational harm within her community and industry.

**E. RELIEF REQUESTED**

394. Plaintiff seeks judgment against all Defendants, jointly and severally, for:

1. Compensatory damages in an amount to be proven at trial;

2. Punitive damages for willful, malicious, and oppressive conduct;

3. Declaratory relief voiding all orders, liens, and charges obtained through abuse of process;

4. Injunctive relief prohibiting further misuse of legal process;

5. Restitution of all sums paid pursuant to void orders or liens;

6. Costs of suit and attorney's fees where permitted by law; and

7. Such other and further relief as the Court deems just and proper.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

# SIXTH CAUSE OF ACTION

## Fraud (Intentional Misrepresentation, Concealment, and

## Scheme to Defraud)

*(Against All Defendants)*

395. Plaintiff realleges and incorporates by reference Paragraphs 1 through 394 of this Complaint, including all general allegations, definitions, and factual background, as though fully set forth herein.

396. Under California law, fraud requires: (1) misrepresentation (false representation, concealment, or nondisclosure where a duty to disclose exists); (2) knowledge of falsity; (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damage. *(Lazar v. Superior Court (1996) 12 Cal.4th 631, 638; LiMandri v. Judkins (1997) 52 Cal.App.4th 326, 336–37.)*

397. Fraud must be pled with particularity, identifying the "who, what, when, where, and how" of the misconduct. *(Tarmann v. State Farm Mut. Auto. Ins. Co. (1991) 2 Cal.App.4th 153, 157.)*

398. This Count pleads a scheme-wide fraud combining affirmative misstatements and concealments by Defendants acting in concert. Omission-only fraudulent concealment is pleaded separately in the Tenth Cause of Action, and corruption of the judicial machinery is pleaded separately in the Twenty-Fourth Cause of Action.

**Particularized Fraudulent Conduct**

399. False "$1.2 Million" Value Narrative (Late 2024–June 2025). Defendants LC Equity (through Brian Cronin and other agents), Receiver Richardson "Red" Griswold (through Neil Shaffer and Jarrod Ready), and Mono County counsel Matthew Silver repeatedly represented to courts, market participants, and Plaintiff that the June Lake property was worth no more than approximately $1.2 million in order to justify foreclosure, depress bidding, and facilitate insider acquisition.

400. These misrepresentations were made in hearings and written submissions in state and bankruptcy proceedings, in communications to lenders and buyers, and in direct communications to Plaintiff and Plaintiff's broker.

401. The "$1.2 million" narrative was knowingly false. Defendants possessed certified appraisals and market data substantially higher than $1.2 million, including:

    a. December 15, 2016 — $1,660,000;

    b. June 1, 2022 — $2,300,000;

    c. September 17, 2023 — $2,850,000;

    d. February 8, 2024 — $2,850,000.

402. Defendants also possessed, or were informed of, bona fide purchase interest and offers substantially above $1.2 million, including offers in the range of approximately $1.8 million (2013/2018–2023) and a bona fide offer of approximately $1.5 million in April 2025.

403. Suppression of Higher Offers and Appraisals (2024–2025). Receiver Griswold and counsel, together with Mono County counsel, suppressed higher offers and appraisals from required reports and court filings, and withheld the same from Plaintiff, lenders, and buyers, despite fiduciary and official duties to disclose.

404. This suppression was intended to create a false "no equity" record to accelerate foreclosure and chill competitive bidding.

405. Promissory Fraud Regarding Interest Non-Accrual (2023–2024). LC Equity and approving Doe Investor Defendants promised Plaintiff, verbally and in writing, that interest would not accrue during enforcement delays caused by Mono County litigation and related enforcement activity.

406. These promises were made during refinance and sale discussions while receivership and County enforcement were pending and were intended to induce Plaintiff to delay or forego alternative protective actions.

407. Defendants' fraudulent intent is demonstrated by their later inclusion of that same interest in payoff demands and court communications, inflating the debt and blocking closings.

408. Inflated and False Payoff Demands (Spring 2025). LC Equity, through counsel, and the Receiver's counsel issued payoff statements to lenders and buyers reflecting an alleged payoff of approximately $1.4 million—roughly $400,000 above the approximately $950,000 payoff Plaintiff had been led to believe was accurate.

409. These payoff demands included interest previously promised not to accrue, void lien amounts, and unrelated charges, and were designed to deter non-insider buyers and ensure only LC Equity-affiliated interests could close.

410. Misrepresentation of Judicial Authority / Insertion of Unauthorized Order Language (Beginning November 2024). Mono County counsel Matthew Silver, in coordination with the Receiver's counsel, drafted and submitted proposed orders containing powers never granted on the record, including unilateral lockouts, expanded receiver authority, and post-sale personal billing of Plaintiff.

411. These proposed orders were transmitted and entered beginning on or about November 6, 2024, and were thereafter used with title companies, lenders, and law enforcement as though valid.

**Jurisdictional and Procedural Misstatements; Use of Void Orders (2021–2025).**

412. County counsel and the Receiver procured and enforced orders during periods when jurisdiction was divested by pending appeals (Cal. Code Civ. Proc. § 916) and while the federal bankruptcy automatic stay was operative (11 U.S.C. § 362), including orders dated 12/16/2021, 12/29/2021, 04/13/2023, 02/22/2024, 07/11/2024, 10/10/2024, and subsequent receivership orders.

413. Defendants represented or implied that these orders were valid and enforceable despite their voidness, in order to justify coercive enforcement activity and suppress Plaintiff's ability to refinance or sell.

414. Listing Suppression and Market Interference (Early–Mid 2025). The Receiver's office and counsel interfered with Plaintiff's listing and sale efforts by directing Plaintiff's broker to remove or shut down the active listing and by discouraging pending interest, including a bona fide offer of approximately $1.5 million.

415. Defendants relied on undisclosed "inspection" findings (first inspection on or about May 14, 2025) that were not provided to Plaintiff, lenders, or the court while using those findings to justify suppressing market activity.

416. Concealment of Conflicts and Self-Dealing (June 3–4, 2025). On June 3, 2025, during proceedings concerning dismissal of Plaintiff's Chapter 13 case, LC Equity's counsel Brian Cronin failed to disclose his intent to have the property purchased at the June 4, 2025 foreclosure by an insider-affiliated interest.

417. Cronin later admitted at a creditors' meeting that he purchased the property and disparaged the asset, evidencing bias, self-interest, and concealment of material conflicts.

418. Lien and Title Misrepresentations (2018–2025). Mono County counsel and staff recorded and refused to release administrative liens functioning as a de facto lis pendens, including at least one lien recorded in or around 2018, even after expungement or rejection, thereby clouding title, deterring lenders and buyers, and misrepresenting enforceability.

**Scienter, Intent, Reliance, and Damages**

419. Defendants knew, or recklessly disregarded, the falsity of the above statements and omissions because they possessed contradictory appraisals, offers, payoff agreements, and procedural records, and because Plaintiff repeatedly objected and provided notice on the record.

420. Defendants intended that courts authorize foreclosure based on a false "no equity" record, that lenders and buyers withdraw due to inflated payoffs and title clouds, and that Plaintiff forego refinance and sale opportunities.

421. Plaintiff reasonably relied on statements of court-appointed fiduciaries and officers of the court, on recorded instruments, on payoff letters presented as accurate, and on the assumption that proposed orders conformed to oral rulings.

422. Foreseeable third parties, including lenders and buyers, predictably relied on payoff statements, title records, and counsel's representations, and their withdrawal directly harmed Plaintiff.

423. As a direct and proximate result of Defendants' fraud, Plaintiff suffered damages including loss of the June Lake property (approximately $2.8 million fair market value), lost rental and business income (approximately $250,000 per year), loss of personal and business property,

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

exposure to unlawful post-sale charges, severe emotional distress, reputational harm, and substantial litigation costs.

**Prayer**

424. Plaintiff seeks judgment against all Defendants, jointly and severally, for:

1. Compensatory damages according to proof;

2. Punitive damages under Civ. Code § 3294;

3. Rescission and cancellation of transactions, orders, liens, and instruments procured by fraud;

4. Restitution and disgorgement of sums obtained through fraudulent demands;

5. Declaratory relief voiding the foreclosure and any post-sale personal billing;

6. Costs of suit and attorney's fees where permitted; and

7. Such other relief as the Court deems just and proper.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

## SEVENTH CAUSE OF ACTION

### Conversion

*(Against All Defendants)*

425. Plaintiff realleges and incorporates by reference Paragraphs 1 through 424 of this Complaint, including all general allegations, definitions, and factual background, as though fully set forth herein.

**Legal Standard**

426. Under California law, conversion is "the wrongful exercise of dominion over the personal property of another" in a manner inconsistent with the owner's rights. *(Welco Elecs., Inc. v. Mora (2014) 223 Cal.App.4th 202, 208.)*

427. To establish conversion, Plaintiff must prove: (1) ownership or right to possession of property; (2) wrongful disposition or interference with that property; and (3) resulting damages. *(Id.)*

428. Conversion applies to tangible personal property and to certain intangible property, including specific, identifiable funds, proceeds, and contract rights. *(Fremont Indem. Co. v. Fremont Gen. Corp. (2007) 148 Cal.App.4th 97, 119.)*

429. A defendant cannot avoid liability merely by asserting it acted "under court order" where the order was void or where the conduct exceeded

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

the authority conferred. (Strathvale Holdings v. E.B.H. (2005) 126 Cal.App.4th 1241, 1250.) Acts taken in violation of the bankruptcy automatic stay are void. (11 U.S.C. § 362(a); In re Schwartz (9th Cir. 1992) 954 F.2d 569, 571.)

430. Court-appointed receivers may be personally liable for wrongful possession, exclusion, seizure, retention, or disposition of property outside their lawful authority. *(Mosser v. Darrow (1951) 341 U.S. 267, 272.)*

**Factual Allegations**

431. Plaintiff's Ownership and Possessory Rights.

At all relevant times, Plaintiff was the rightful owner of, and entitled to possess, the following property and interests:

a. Personal Property at the June Lake Property, including furniture, fixtures, equipment, inventory, business files, legal records, financial records, and sentimental family heirlooms;

b. Business Income Streams, including lawful rental and hospitality income, deposits, and accounts receivable arising from operations at the June Lake property; and

c. Identifiable Funds, including rents, deposits, and operating income held in trust or otherwise due to Plaintiff under contract, statute, and court-imposed fiduciary duties.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

432. Plaintiff never voluntarily conveyed ownership of these assets. Plaintiff retained legal and equitable rights in the above property until Defendants unlawfully seized, withheld, disposed of, or converted it.

**Receiver's Unlawful Seizure and Exclusion.**

433. Receiver Richardson Griswold, acting under void and jurisdictionally defective orders entered during periods when the trial court lacked jurisdiction due to pending appeals (Code Civ. Proc., § 916) and/or while the federal bankruptcy automatic stay was in effect (11 U.S.C. § 362(a)), excluded Plaintiff from the property, seized personal property, and refused to return it.

434. The Receiver seized and retained Plaintiff's personal property without providing a complete inventory, without lawful notice, and without providing a legally compliant procedure for retrieval.

**Foreclosure and Value Suppression to Enable Insider Acquisition.**

435. LC Equity Group, its investor Defendants, and counsel acquired the property through foreclosure on June 4, 2025, after deliberately suppressing higher offers—including documented offers exceeding $1.5 million—in order to ensure insider acquisition and eliminate competitive bidding.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

436. The foreclosure occurred one day after the rushed dismissal of Plaintiff's Chapter 13 case, and during a period in which Defendants acted to accelerate foreclosure in violation of procedural safeguards and in contravention of bankruptcy-related protections, including the automatic stay and applicable rules governing enforcement timing.

**Unlawful Disposition of Plaintiff's Personal Property.**

437. After seizing Plaintiff's personal property, Defendants retained, sold, destroyed, discarded, or otherwise disposed of it without complying with statutory notice and storage requirements under Cal. Civ. Code §§ 1980–1991, depriving Plaintiff of both valuable and irreplaceable items.

**Wrongful Retention of Funds and Business Proceeds.**

438. Defendants wrongfully withheld Plaintiff's rents, deposits, and business proceeds, failed to account for those funds, and failed to remit them as required by statute and fiduciary duty, including the Receiver's duty to account under Code Civ. Proc. § 568.5.

**Post-Foreclosure Billing and Financial Control Without Entitlement.**

439. After foreclosure, Mono County, the Receiver, and LC Equity demanded and collected payment for utilities, taxes, and Receiver fees while

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

simultaneously asserting dominion and control over Plaintiff's funds, despite having no lawful entitlement to do so.

**Lack of Consent and Lack of Lawful Authority.**

440. Plaintiff never consented to any seizure, sale, retention, or disposition of her property. Defendants' purported authority was based on orders and instruments that were void because they were entered:

    a. Without subject matter jurisdiction;

    b. In violation of the automatic bankruptcy stay;

    c. During appeals staying trial court jurisdiction (Code Civ. Proc., § 916); and/or

    d. Granting powers beyond those authorized under Code Civ. Proc. §§ 564, 568, and 568.5.

**Damages**

441. As a direct and proximate result of Defendants' conversion, Plaintiff suffered damages including:

    a. Loss of personal property of substantial economic and sentimental value;

    b. Loss of rental and business income (approximately $250,000 per year);

    c. Relocation and replacement costs;

d. Litigation-related costs incurred to recover property and challenge void acts; and

e. Severe emotional distress and reputational harm.

Anticipated Defenses and Rebuttal

442. The litigation privilege (Civ. Code § 47(b)) does not bar liability where the gravamen of the claim is non-communicative conduct, including wrongful seizure, exclusion, retention, or conversion of property, rather than protected pleadings or statements. (*Brown v. Kennard* (2001) 94 Cal.App.4th 40, 44–45; *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1058–1060.) Separately, Plaintiff alleges that Defendants' acts were undertaken pursuant to orders entered without jurisdiction and/or in violation of the automatic bankruptcy stay, and that acts taken in violation of the stay are void. (11 U.S.C. § 362; In re Schwartz (9th Cir. 1992) 954 F.2d 569, 571; In re Gruntz (9th Cir. 2000) 202 F.3d 1074, 1082–83 (en banc).)

443. Judicial or quasi-judicial immunity does not shield a receiver from personal liability for acts taken in the clear absence of jurisdiction or outside the scope of the authority conferred by law. See Mosser v. Darrow (1951) 341 U.S. 267, 272 (court-appointed fiduciary personally liable for acts beyond lawful authority). Plaintiff alleges that the seizure, retention, and

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

disposition of her personal property were undertaken without jurisdiction and beyond any lawful receivership powers.

444. Bankruptcy preemption does not apply where conduct violates the automatic stay (11 U.S.C. § 362) and constitutes post-stay acts undertaken for personal gain. Acts in violation of the stay are void. *(In re Schwartz (9th Cir. 1992) 954 F.2d 569, 571.)*

**Relief Requested**

445. Plaintiff seeks judgment against all Defendants, jointly and severally, for:

1. Immediate return of all converted property, or if return is impossible, payment of full fair market value;

2. General, special, and consequential damages in amounts to be proven at trial;

3. Punitive damages under Civil Code § 3294 for willful, malicious, and oppressive conduct;

4. A full accounting of all funds and proceeds taken;

5. Declaratory relief voiding all orders and transactions effectuating the conversion;

6. Costs of suit and such other relief as the Court deems just and proper.

## EIGHTH CAUSE OF ACTION

### Abuse of Process (California Law)

*(Against County of Mono; LC Equity Group, Inc.; Receiver Richardson "Red" Griswold; Matthew Silver; Jarrod Ready; Neil Shaffer; Civica Law Group, APC; and Does 1–50, inclusive)*

446. Plaintiff realleges and incorporates by reference Paragraphs 1 through 445 of this Complaint, including all facts set forth in the Statement of Facts, as though fully set forth herein.

**Legal Standard**

447. Under California law, abuse of process requires: (a) an ulterior motive in the use of judicial process; and (b) a willful act in the use of that process not proper in the regular course of proceedings. *(Rusheen v. Cohen (2006) 37 Cal.4th 1048, 1056–57; Spellens v. Spellens (1957) 49 Cal.2d 210, 232–33.)*

448. The tort addresses the misuse of procedures after issuance—not merely the filing of a case—where process is perverted to achieve an objective outside its intended purpose. *(Younger v. Solomon (1974) 38 Cal.App.3d 289, 297.)*

449. The litigation privilege (Civ. Code § 47(b)) does not bar liability where the gravamen of the claim is non-communicative conduct, including

---

111
COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

wrongful seizure, exclusion, retention, or conversion of property, rather than protected pleadings or statements. (Brown v. Kennard (2001) 94 Cal.App.4th 40, 44–45; Rusheen v. Cohen (2006) 37 Cal.4th 1048, 1058–1060.) Separately, Plaintiff alleges that Defendants' acts were undertaken pursuant to orders entered without jurisdiction and/or in violation of the automatic bankruptcy stay, and that acts taken in violation of the stay are void. (11 U.S.C. § 362; In re Schwartz (9th Cir. 1992) 954 F.2d 569, 571; In re Gruntz (9th Cir. 2000) 202 F.3d 1074, 1082–83 (en banc).)

450. Process used in violation of the automatic bankruptcy stay (11 U.S.C. § 362) or during statutory appeal divestiture (Code Civ. Proc., § 916) is void ab initio. *(In re Gruntz (9th Cir. 2000) 202 F.3d 1074, 1082–83 (en banc); In re Schwartz (9th Cir. 1992) 954 F.2d 569, 571.)*

**Factual Allegations**

**Ulterior Purpose — Insider Transfer, Retaliation, and Revenue.**

451. Defendants used receivership, state-court, and bankruptcy-related process not to neutrally preserve assets, but to: (i) engineer a below-market foreclosure benefiting LC Equity and its investors; (ii) retaliate against Plaintiff for protected petitioning activity; and (iii) extract continuing fees and charges, including post-foreclosure billing, under color of judicial authority.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

**Willful Misuse of Process.**

452. Defendants committed the following non-exhaustive abuses of process:

**Non-Conforming and Unauthorized Orders.**

453. Mono County counsel Matthew Silver and the Receiver's counsel (including Jarrod Ready and Neil Shaffer) drafted and submitted proposed orders materially expanding powers never granted on the record, including lockout authority, seizure and control of income, restrictions on refinance and sale, and post-foreclosure personal billing.

454. These orders were presented ex parte and/or without meaningful notice, obtained signatures, and then used as purported authority to effect seizures, recordings, and billing despite jurisdictional defects.

**Use of Process During Jurisdictional Bars.**

455. Defendants invoked and enforced receivership orders and foreclosure steps while: (i) the automatic stay under 11 U.S.C. § 362 was operative, and/or (ii) appellate divestiture under Code Civ. Proc. § 916 applied, rendering the resulting "authority" void.

**Emergency and Shortened-Time Filings as a Tactic.**

456. Defendants repeatedly filed "emergency" and shortened-time applications timed to deprive Plaintiff of a meaningful chance to oppose,

113
COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

followed by immediate use of the resulting orders to lock out Plaintiff, record instruments, and impose charges.

**Manipulation of Foreclosure Timing.**

457. Defendants coordinated foreclosure timing to occur immediately after dismissal of Plaintiff's Chapter 13 case (June 4, 2025), in order to evade ordinary stays, preempt relief, and foreclose before Plaintiff could obtain effective judicial review.

**Suppression of Market and Listing Interference.**

458. The Receiver, invoking purported receivership "authority," directed Plaintiff's broker to remove or terminate an active listing and communicated to prospective buyers that the property could not be used as an investment—actions premised on non-conforming orders—to choke off competitive sale and refinancing options.

**Recording and Maintaining Void Instruments.**

459. Mono County actors and co-defendants recorded and maintained liens, notices, and orders known to be void, expunged, or unauthorized, and used those instruments with title companies and lenders to obstruct transactions and prevent Plaintiff from preserving equity.

**Post-Foreclosure Personal Billing.**

---

114
COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

460. After the June 4, 2025 sale, the Receiver, Mono County, and LC Equity continued billing Plaintiff for taxes, utilities, and receiver fees under color of void and unauthorized orders, despite Plaintiff no longer holding title.

**Willfulness and Impropriety.**

461. Each act was intentional, undertaken with knowledge of jurisdictional defects and collateral objectives (insider transfer, retaliation, and fee extraction), and inconsistent with the lawful purpose of receivership, foreclosure, or bankruptcy-related administration.

**Causation and Damages**

462. As a direct and proximate result of Defendants' abuse of process, Plaintiff suffered damages including: (i) loss of the June Lake property (FMV approximately $2.8 million); (ii) loss of rental and business income (approximately $250,000 per year); (iii) loss of personal and business property and records; (iv) litigation expense and loss of business opportunities; and (v) severe emotional distress and reputational harm.

**Anticipated Defenses and Rebuttals**

463. The litigation privilege (Civ. Code § 47(b)) does not bar liability where the gravamen of the claim is non-communicative conduct, including wrongful seizure, exclusion, retention, or conversion of property, rather than

protected pleadings or statements. (Brown v. Kennard (2001) 94 Cal.App.4th 40, 44–45; Rusheen v. Cohen (2006) 37 Cal.4th 1048, 1058–1060.) Separately, Plaintiff alleges that Defendants' acts were undertaken pursuant to orders entered without jurisdiction and/or in violation of the automatic bankruptcy stay, and that acts taken in violation of the stay are void. (11 U.S.C. § 362; In re Schwartz (9th Cir. 1992) 954 F.2d 569, 571; In re Gruntz (9th Cir. 2000) 202 F.3d 1074, 1082–83 (en banc).)

464. To the extent Defendants invoke quasi-judicial immunity, such protection does not extend to ultra vires acts taken in the clear absence of jurisdiction or outside the scope of lawful authority. (Mosser v. Darrow (1951) 341 U.S. 267, 272.)

465. Void acts may be collaterally attacked, and abuse of process is actionable regardless of whether the underlying proceeding has formally concluded.

466. Bankruptcy preemption is not a bar where the acts were taken in violation of the automatic stay and are void and independently actionable. (In re Schwartz, supra, 954 F.2d at 571.)

**Relief Requested**

467. Plaintiff seeks judgment against Defendants, jointly and severally, for:

1. Compensatory damages according to proof;

2. Punitive damages against individual defendants under Civ. Code § 3294;

3. Declaratory relief voiding orders, liens, and instruments obtained through abuse of process;

4. Injunctive relief prohibiting further misuse of legal process and post-foreclosure billing;

5. Restitution and disgorgement of sums obtained via the abusive conduct; and

6. Costs of suit and such further relief as the Court deems just and proper.

## NINTH CAUSE OF ACTION

### Fraudulent Concealment (Omissions-Only Theory)

*(Against County of Mono; LC Equity Group, Inc.; Brian Cronin; Doe Investor Defendants 1–25; Receiver Richardson "Red" Griswold; Neil Shaffer; Jarrod Ready; Griswold Law, APC; Matthew Silver; Civica Law Group, APC; and Does 26–50)*

468. Plaintiff realleges and incorporates by reference Paragraphs 1 through 467 as though fully set forth herein.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

**Legal Standard**

469. Fraudulent concealment requires:

(1) concealment or suppression of a material fact;

(2) a duty to disclose that fact;

(3) intent to defraud by withholding;

(4) justifiable reliance; and

(5) resulting damage.

*(Lazar v. Superior Court (1996) 12 Cal.4th 631, 638; LiMandri v. Judkins (1997) 52 Cal.App.4th 326, 336–37.)*

470. A duty to disclose arises where:

(a) a fiduciary or confidential relationship exists;

(b) a defendant has exclusive knowledge of material facts;

(c) a defendant actively conceals material facts; or

(d) a defendant makes partial representations that are misleading absent full disclosure. *(LiMandri, supra.)*

471. This count pleads omissions only. Affirmative misrepresentations and promissory fraud are pleaded separately.

**Particularized Concealments**

**Suppression of Bona Fide Offers.**

472. Receiver Griswold (through Shaffer and Ready), LC Equity and Cronin, and County counsel suppressed bona fide buyer interest exceeding $1.5 million, including an April 2025 offer within approximately ten days of listing, and failed to disclose those offers to Plaintiff, lenders, or courts considering abandonment, foreclosure, or fee approvals.

473. These offers were material because they directly contradicted the "no equity" narrative used to justify foreclosure and insider acquisition.

**Concealment of Certified Appraisals.**

474. Defendants possessed and failed to disclose certified appraisals reflecting valuations substantially above $1.2 million, including valuations of $2.3 million (June 1, 2022) and $2.85 million (September 17, 2023; February 8, 2024), while advancing proceedings premised on depressed valuation.

**Concealment of Unauthorized Order Language.**

475. On or about November 6, 2024, County counsel Matthew Silver, working with Receiver's counsel, transmitted a proposed order inserting powers not granted on the record, including expanded authority and post-

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

sale personal billing. The material additions and their lack of on-record authorization were not disclosed.

**Concealment of Jurisdictional Defects.**

476. Defendants proceeded without disclosing that certain receivership-related actions occurred while the automatic stay (11 U.S.C. § 362(a)) and/or appellate divestiture (Code Civ. Proc., § 916) were operative, rendering derivative acts void.

**Concealment of Inspection Timing.**

477. While invoking alleged "conditions" to justify lockout and suppression of market activity, Receiver Griswold did not conduct an initial inspection until May 14, 2025, and did not disclose the timing or produce a report while exercising control.

**Concealment of Listing Interference.**

478. The Receiver's office directed Plaintiff's broker to remove an active listing and chilled market exposure, yet did not disclose that interference to courts considering value, abandonment, or fee matters.

**Concealment of Insider Conflict.**

479. LC Equity's managing member Brian Cronin failed to disclose his intent for insider acquisition at the June 4, 2025 foreclosure while advocating positions that benefitted that outcome.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

**Duty to Disclose**

480. Receiver Griswold owed fiduciary duties of loyalty, candor, and value maximization requiring disclosure of material offers, appraisals, conflicts, and jurisdictional defects.

481. County counsel and Receiver's counsel, as officers of the court, owed duties not to mislead by omission and not to submit orders inconsistent with oral rulings.

482. LC Equity, Cronin, and approving investors owed disclosure duties where they made partial representations concerning valuation and payoff while possessing exclusive knowledge of material facts.

**Intent, Reliance, and Damage**

483. Defendants concealed these facts to depress apparent value, justify foreclosure, eliminate competitive refinancing or sale, and enable insider acquisition.

484. Plaintiff reasonably relied on the neutrality of the receiver, the candor of officers of the court, and the completeness of the record presented in proceedings affecting her property rights.

485. It was foreseeable and intended that lenders and buyers would rely on the incomplete and misleading record, withdraw financing, and decline to bid—directly harming Plaintiff.

486. The concealments were a substantial factor in abandonment-related proceedings, foreclosure, suppression of competitive bidding, and continued personal billing.

487. Plaintiff suffered damages including loss of property (approximately $2.8 million fair market value), lost income, loss of personal and business property, litigation expenses, and severe emotional distress.

**Prayer**

488. Plaintiff seeks compensatory damages, punitive damages under Civil Code § 3294, rescission and cancellation of transactions tainted by concealment, declaratory and injunctive relief preventing reliance on concealment-tainted instruments, restitution, costs, and such further relief as the Court deems just.

**TENTH CAUSE OF ACTION**

**Fraud (Intentional Misrepresentation, Promissory Fraud, and Equitable Fraud)**

*(Against County of Mono; LC Equity Group, Inc.; Brian Cronin; approving investors (Does 1–25); Receiver Richardson Griswold; Neil Shaffer; Jarrod Ready; Griswold Law, APC; Matthew Silver; Stacy Simon; Anne L. Frievalt; Best Best & Krieger LLP; Civica Law Group, APC; and Does 26–50)*

489. Plaintiff realleges and incorporates Paragraphs 1 through 488 as though fully set forth herein.

**Legal Standard**

490. Common-law fraud requires misrepresentation, knowledge of falsity, intent to induce reliance, justifiable reliance, and damage. *(Lazar, supra.)*

491. Promissory fraud arises where a promise is made without intent to perform. *(Tenzer v. Superscope* (1985) 39 Cal.3d 18, 30.)

492. Fraud supporting equitable relief includes intrinsic and extrinsic fraud that prevents a fair adversarial process or results in judgments or instruments procured by deception.

**Particularized Misrepresentations**

493. Depressed-Valuation Representations (2021–2025). Defendants represented to courts, lenders, and market participants that the property was worth no more than approximately $1.2 million while possessing contrary certified appraisals and market data.

494. These statements were made in filings, hearings, payoff communications, and communications with brokers and lenders.

**False Payoff and Interest-Waiver Representations.**

495. LC Equity and approving investors represented that interest would not accrue during enforcement delays, yet later demanded retroactive interest and issued inflated payoff letters including waived interest and void charges.

**Misrepresentation of Order Authority.**

496. Defendants represented that proposed and entered orders accurately reflected court rulings and were valid and enforceable, despite insertion of powers not granted and despite jurisdictional defects.

497. Title-Clouding Representations. County actors recorded and maintained encumbrances while representing their enforceability, despite knowledge of expungement or lack of statutory authority.

**Scienter and Intent**

498. Defendants knew their representations were false because they possessed contradictory appraisals, offers, and procedural records.

499. The timing and coordination of filings, listing interference, and foreclosure demonstrate intent to induce reliance and depress value.

**Reliance and Causation**

500. Plaintiff relied on representations concerning valuation, payoff amounts, order validity, and enforcement authority in making decisions regarding refinance, litigation strategy, and preservation of assets.

501. Lenders, buyers, and courts also foreseeably relied on the representations, resulting in withdrawal of financing, acceptance of abandonment narratives, and foreclosure at a depressed price.

502. The fraud was a substantial factor in Plaintiff's loss of property, lost income, litigation expense, and emotional distress.

**Equitable Component**

503. Defendants' conduct constitutes fraud sufficient to support equitable rescission, cancellation of instruments, and declaratory relief regarding the invalidity of instruments and derivative acts procured by fraud.

Prayer

504. Plaintiff seeks compensatory damages, punitive damages under Civil Code § 3294, rescission and cancellation of fraud-tainted instruments, declaratory relief, injunctive relief preventing enforcement of fraud-based instruments, restitution and disgorgement, costs, and such further relief as the Court deems just.

**ELEVENTH CAUSE OF ACTION**

**Civil Conspiracy to Commit Fraud and Deprive Constitutional Rights**

(Against All Defendants)

**A. Incorporation of Allegations**

505. Plaintiff realleges and incorporates by reference Paragraphs 1 through 504 of this Complaint, including all general allegations, definitions, and factual background, as though fully set forth herein.

**B. Legal Standard**

506. A civil conspiracy exists where:

1. Two or more persons agree to commit a wrongful act;

2. They act in furtherance of the agreement; and

3. The plaintiff suffers damage as a result. (*Kidron v. Movie Acquisition Corp.*, 40 Cal.App.4th 1571, 1581 (1995)).

507. Conspiracy is not a separate tort but serves to extend liability to all who share the common plan, even if they did not commit each individual act. (*Wyatt v. Union Mortgage Co.*, 24 Cal.3d 773, 784 (1979)).

508. Where the object of the conspiracy includes fraud, abuse of process, or violation of constitutional rights under color of state law, co-conspirators are jointly and severally liable for all resulting damages.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

(*Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980); *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002)).

### C. Factual Allegations

### Agreement and Common Plan

509. Defendants — including Mono County, County Counsel Matthew Silver of Civica Law Group, Receiver Richardson "Red" Griswold and his attorneys (Jarrod Ready and Neil Shaffer), Chapter 7 Trustee Richard Marshack and his law firm, LC Equity Group, Inc., and their respective counsel — entered into an agreement, express or implied, to engage in coordinated misconduct for their mutual benefit and to the detriment of Plaintiff.

### Meeting of the Minds via Altered Orders.

510. Defendants reached a **common plan** to secure outcomes not granted in open court by **inserting unauthorized language into proposed orders** and obtaining signatures without notice. Overt acts included drafting and circulating redlines after hearings, sending cover emails/letters to chambers, and then **invoking the signed—but non-conforming—orders** to lock Plaintiff out, cloud title, and bill post-foreclosure.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

511. Each Defendant knew, or reasonably should have known, of the wrongful acts being committed by the others, and nevertheless acted in furtherance of the common scheme.

512. Overt Acts in Furtherance of the Conspiracy

The overt acts undertaken in furtherance of this conspiracy included, but were not limited to:

a. **Coordinated Submission of Misleading and Unauthorized Court Orders** – Defendants drafted and presented proposed orders containing powers never granted on the record, including expanded receivership authority, post-foreclosure billing rights, and restrictions on Plaintiff's property access.

b. **Use of Administrative Liens, Fraudulent Recordings, and Void Lis Pendens** – Mono County and others repeatedly recorded liens and lis pendens despite prior court orders rejecting or expunging them, with the intent to cloud title and block refinancing or sale.

c. **Suppression and Manipulation of Property Value** – Defendants misrepresented the property's value to the bankruptcy trustee, concealing appraisals up to $2.8 million and bona fide

128
COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

purchase offers above $1.5 million to justify abandonment and foreclosure.

d. **Orchestration of Foreclosure and Denial of Refinancing** – Defendants interfered with potential buyers and lenders, including directing Plaintiff's broker to "shut down" a pending $1.5 million offer that would have preserved equity.

e. **Initiation of Billing and Adversary Proceedings Based on False Narratives** – After foreclosure, Defendants billed Plaintiff for taxes, utilities, and Receiver fees under orders void for lack of jurisdiction, and initiated adversary proceedings against the purchaser to extend control and generate additional fees.

f. **Collaboration During Court Hearings and Informal Communications** – Defendants engaged in casual and cooperative interactions during court proceedings suggestive of bias, prearrangement, and coordinated litigation strategy.

513. Unlawful Objectives and Constitutional Deprivations

The conspiracy's objectives included:

- **Deprivation of Due Process** – By blocking Plaintiff's access to court, manipulating hearing schedules, and submitting orders outside lawful jurisdiction;

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

- **Violation of Equal Protection** – By targeting Plaintiff for disparate treatment due to her exercise of protected rights and refusal to concede property;

- **Taking of Property Without Just Compensation** – Effectively stripping Plaintiff of her real and personal property under color of law without fair market value or lawful authority;

- **Retaliation for Protected Speech and Petitioning** – Punishing Plaintiff for pursuing appeals, exposing governmental misconduct, and seeking judicial redress.

### D. Damages

514. As a direct and proximate result of Defendants' conspiracy, Plaintiff suffered:

- Loss of equity exceeding $1.8 million;

- Loss of annual business income ($\approx$ $250,000/year);

- Loss of irreplaceable personal property and business records;

- Legal costs and depletion of financial resources;

- Reputational harm within her community and industry; and

- Severe emotional distress and physical harm.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

**E. Relief Requested**

515. Plaintiff seeks judgment against all Defendants, jointly and severally, for:

1. General and special damages in an amount to be proven at trial;

2. Punitive damages for willful, malicious, and oppressive conduct;

3. Declaratory relief confirming the existence and legal effect of the conspiracy;

4. Injunctive relief prohibiting further acts in furtherance of the conspiracy;

5. Joint and several liability against all conspirators;

6. Attorney's fees and costs where permitted by law; and

7. Any other relief the Court deems just and proper.

**TWELFTH CAUSE OF ACTION**

**Intentional Interference with Prospective Economic Advantage**

**(California)**

*Against: County of Mono; LC Equity Group, Inc.; Brian Cronin; Richardson "Red" Griswold; Neil Shaffer; Jarrod Ready; Griswold Law, APC; Richard Marshack; Leonard M. Shulman; Shulman Bastian Friedman & Bui LLP; Matthew Silver; Civica Law Group, APC; Best Best & Krieger LLP; Stacy Simon; Anne L. Frievalt; RESS Financial Corp.; Christopher Loria;*

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

*Ashwood TD Services LLC; LC Equity Group investor defendants sued herein as DOES 1–25; and DOES 26–50, inclusive.*

**A. Incorporation of Allegations**

516. Plaintiff realleges and incorporates by reference Paragraphs 1 through 515 of this Complaint (including the Statement of Facts and all referenced exhibits) as though fully set forth herein.

**B. Legal Standard**

517. To state a claim for intentional interference with prospective economic advantage, Plaintiff must allege: (1) an economic relationship with a third party containing the probability of future economic benefit; (2) Defendants' knowledge of that relationship; (3) intentional, independently wrongful acts designed to disrupt the relationship; (4) actual disruption; and (5) economic harm. A binding written contract is not required. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1153–59 (2003); *Della Penna v. Toyota*, 11 Cal.4th 376, 392–93 (1995).

**C. Factual Allegations**

**Probable Economic Relationships.**

518. Plaintiff actively listed and marketed the June Lake property through a licensed broker (MLS No. [●]), resulting in ongoing negotiations with identified buyers and lenders, including DOE Buyer 1, who made a

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

verbal offer of at least $1.5 million and represented financial ability to close. Plaintiff also maintained refinance discussions with identified lenders to pay off the loan and retain the property.

**Defendants' Knowledge of the Relationships and Value.**

519. Defendants knew of Plaintiff's buyer/lender relationships and the high probability of consummating a sale/refinance ≥ $1.5 million, including through the MLS listing, direct communications with Plaintiff's broker, payoff/title correspondence, and court filings. Defendants were also aware of two independent written appraisals valuing the property at or near $2.8 million, dated [Date 1] and [Date 2], prepared by [Appraiser 1, License #] and [Appraiser 2, License #] (the "$2.8M Appraisals"). (Exs. A-1, A-2.)

**Void Receivership Order (Jurisdictional Defect).**

520. The receivership appointment and related orders entered on or about October 10, 2024 were void ab initio because:

a. At the time of appointment, Plaintiff's bankruptcy automatic stay under 11 U.S.C. § 362(a) was in effect, barring "any act to obtain possession of" or control over property of the estate; actions taken in violation of the stay are void;

b. A pending appeal subsequently divested the trial court of jurisdiction over matters embraced by the appeal (Cal. Code Civ.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

Proc. § 916); and

c. Material provisions expanding the Receiver's authority were inserted after the hearing and never orally pronounced. Accordingly, the Receiver lacked lawful authority to direct brokers, suppress marketing, or interfere with third-party negotiations. Acts taken under color of a void order are independently wrongful and not privileged.

521.    Independently Wrongful Acts Aimed at Disruption. With knowledge of Plaintiff's economic relationships and the $2.8M Appraisals, Defendants intentionally undertook independently wrongful acts to destroy those relationships, including:

• Broker Interference / Delisting: The Receiver and/or his counsel directed and/or pressured Plaintiff's broker to remove the MLS listing and cease negotiations, immediately collapsing ongoing buyer discussions and showings (Ex. MLS-1; Broker Decl.);

• Inflated/Unlawful Payoff Demands: Issuing payoff figures to buyers/lenders that included interest previously promised not to accrue, void/unauthorized charges, and other improper amounts, rendering financing and closing infeasible (Exs. PO-1…);

• Title-Clouding Instruments: Recording and/or maintaining

134
COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

invalid instruments (including administrative liens or attachments to orders) that functioned as a de facto lis pendens despite expungement/denial, deterring buyers and lenders (Exs. Title-1…);

• Suppression/Misstatement of Value: Concealing the two $2.8M Appraisals (Exs. A-1, A-2) while promoting a false $1.2M "valuation" to chill market interest and to justify abandonment/foreclosure;

• Coordinated Timing / Procedural Manipulation: Orchestrating shortened-time motions, off-record directives, and strategic filings to kill in-process deals and suppress competitive bidding.

522. These acts are independently wrongful because they violate statutory/common-law duties (including the bankruptcy stay, due-process/jurisdictional limits, fraud/deceit (Civ. Code §§ 1709–1710), prohibitions on false/invalid recordings, and unfair competition (Bus. & Prof. Code § 17200)), and constitute non-communicative marketplace conduct outside any litigation privilege.

**Actual Disruption.**

523. As a direct and foreseeable result, the listing was pulled at Defendants' direction, the verbal $1.5M offer and negotiations collapsed, lenders withdrew, and the contemplated sale/refinance did not proceed.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

**Privilege/Immunity Inapplicable.**

524. The litigation privilege (Civ. Code § 47(b)) and judicial/quasi-judicial immunities do not protect: (i) broker delisting directives, (ii) payoff manipulation sent to third-party lenders/buyers, (iii) the recording/maintenance of invalid instruments, or (iv) acts taken without jurisdiction or under a void order. The conduct alleged here concerns market interference and unlawful acts, not protected communications in litigation.

**Damages.**

525. Plaintiff suffered: (a) loss of the $1.5M+ sale/refinance opportunity; (b) lost equity measured by the difference between the $2.8M appraised FMV and the forced foreclosure outcome of $-0-; (c) lost business income (~$250,000/year); (d) additional carrying and litigation costs; and (e) reputational harm with market participants.

**D. Prayer for Relief**

526. Plaintiff requests judgment against all Defendants, jointly and severally, for:

1. Compensatory damages, including lost equity/opportunity and consequential harms;

2. Punitive damages for willful, malicious, and oppressive conduct;

---

136
COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

3. Injunctive relief prohibiting interference with listings/negotiations and requiring correction/expungement of invalid instruments and cessation of deceptive payoff practices;

4. Restitution/disgorgement of gains obtained by thwarting the sale/refinance;

5. Costs of suit and such other and further relief as the Court deems just and proper.

## THIRTEENTH CAUSE OF ACTION

### Violation of Equal Protection – Selective Enforcement and Disparate Treatment

### (42 U.S.C. § 1983 – Fourteenth Amendment)

*(Against County of Mono; Nick Criss; Matthew Silver; Civica Law Group, APC; and Does 1–50)*

527. Plaintiff realleges and incorporates by reference Paragraphs 1 through 526 of this Complaint as though fully set forth herein.

**Equal Protection Framework**

528. The Equal Protection Clause of the Fourteenth Amendment prohibits state actors from intentionally treating a person differently from others similarly situated without a rational basis, or from engaging in selective enforcement motivated by retaliation or improper purpose.

529. A "class of one" equal protection claim arises where a plaintiff alleges intentional, differential treatment from similarly situated individuals with no rational basis for the disparity. (*Village of Willowbrook v. Olech* (2000) 528 U.S. 562.)

530. Municipal liability attaches under 42 U.S.C. § 1983 where the constitutional violation results from official policy, practice, ratification, or deliberate indifference. (*Monell v. Dep't of Social Servs.* (1978) 436 U.S. 658.)

**Unlawful Differential Treatment**

531. Defendants, acting under color of state law, subjected Plaintiff to enforcement actions and litigation tactics not applied to similarly situated property owners in Mono County.

532. Such differential treatment included:

    a. Repeated filing and recording of invalid liens and instruments despite court rejection or expungement;

    b. Retaliatory code enforcement actions and inspections not pursued against other similarly situated property owners;

    c. Interference with Plaintiff's ability to sell, refinance, or develop property through misleading or false communications to buyers and lenders;

---

138
COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

d. Procedural obstruction and denial of meaningful court access, including refusal to file objections and other submissions; and

e. Selective application of setback and enforcement rules to Plaintiff's property while ignoring comparable violations by neighboring properties.

**Discriminatory Intent and Selective Enforcement**

533. The pattern of enforcement demonstrates intentional discrimination and retaliatory motive.

534. Plaintiff engaged in protected activity, including filing a cross-complaint against Mono County, pursuing appeals, and challenging unlawful enforcement actions.

535. Following that protected activity, enforcement escalated in severity and frequency beyond that imposed on similarly situated property owners.

536. There was no legitimate governmental interest justifying the disparate treatment. The actions were motivated by retaliation, bias, and improper alignment with private actors seeking foreclosure.

**Unequal Enforcement of Setback Rule**

537. Mono County selectively enforced a 30-foot waterway setback rule against Plaintiff's accessory structure while failing to cite or red-tag

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

numerous similarly situated structures in the June Lake area located within the same setback distance.

538. Plaintiff documented comparable properties in violation of the same rule that were neither cited nor subjected to removal.

539. Plaintiff's structure was red-tagged and removed despite qualifying for size and use exemptions and posing no health or safety hazard.

540. The selective enforcement lacked rational basis and reflects discriminatory and retaliatory intent.

**Municipal Liability (Monell)**

541. The constitutional violations described herein were undertaken pursuant to official policy, ratified decision-making, or longstanding practice within Mono County, including deliberate indifference to constitutional rights in enforcement proceedings.

**Resulting Harm**

542. As a direct and proximate result of Defendants' actions, Plaintiff suffered:

    a. Loss of property and economic opportunity;

    b. Excessive litigation burdens and financial depletion;

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

c. Emotional distress and reputational harm; and

d. Loss of equal standing before the law.

**Prayer**

543. Plaintiff seeks:

1. Declaratory relief that Defendants violated her rights under the Equal Protection Clause;

2. Compensatory damages;

3. Punitive damages against individual defendants acting with malice or reckless disregard;

4. Attorney's fees and costs under 42 U.S.C. § 1988;

5. Injunctive relief prohibiting continued discriminatory practices; and

6. Such further relief as the Court deems just and proper.

### FOURTEENTH CAUSE OF ACTION

### Unlawful Taking Without Just Compensation

### (Fifth and Fourteenth Amendments; 42 U.S.C. § 1983)

*(Against County of Mono; Nick Criss; June Lake Public Utilities District; and Does 1–50)*

544. Plaintiff realleges and incorporates by reference Paragraphs 1 through 543 of this Complaint as though fully set forth herein.

Constitutional Framework

545. Th Fifth Amendment prohibits the taking of private property for public use without just compensation. This protection applies to state and local governments through the Fourteenth Amendment.

546. A property owner may bring a federal takings claim directly under §1983 without exhausting state remedies. *(Knick v. Township of Scott (2019) 588 U.S. 180.)*

**Facts Constituting the Taking**

547. County of Mono, acting through its code enforcement personnel and in coordination with June Lake Public Utilities District, caused or authorized the removal and destruction of Plaintiff's accessory structure.

548. The structure:

   a. Complied with applicable size exemptions;

   b. Required no permit under governing code provisions;

   c. Was not connected to sewer or water;

   d. Posed no health or safety risk.

549. County officials initially alleged a sewer violation and later shifted to a 30-foot setback theory, which was not uniformly enforced against similarly situated properties.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

**Physical Taking and Lack of Compensation**

550. Defendants physically removed or caused removal of Plaintiff's structure without notice, compensation, or lawful adjudication.

551. The removal constituted a permanent physical taking of private property.

552. No compensation was offered or provided.

**Due Process Component**

553. Defendants failed to provide notice, administrative hearing, or meaningful opportunity to contest enforcement prior to removal.

554. The deprivation occurred without lawful procedure and without just compensation.

**Damages**

555. As a direct result of the unlawful taking, Plaintiff suffered:

   a. Loss equal to or exceeding the fair market value of the structure;

   b. Loss of use and enjoyment of property;

   c. Emotional distress; and

   d. Constitutional injury.

**Prayer**

556. Plaintiff seeks:

---

143

1. Declaratory judgment that removal of the structure constituted an unconstitutional taking;

2. Just compensation for the fair market value of the structure;

3. Compensatory damages for associated losses;

4. Punitive damages against individual actors acting with reckless disregard;

5. Injunctive relief preventing further unauthorized takings;

6. Attorney's fees under 42 U.S.C. § 1988; and

7. Such further relief as the Court deems just.

## FIFTEENTH CAUSE OF ACTION

## Declaratory Judgment and Injunctive Relief

## (28 U.S.C. § 2201; Fed. R. Civ. P. 65)

### *(Against All Defendants)*

557. Plaintiff realleges and incorporates by reference Paragraphs 1 through 556 of this Complaint as though fully set forth herein.

**Nature of the Controversy**

558. An actual and ongoing controversy exists between Plaintiff and Defendants concerning the validity, enforceability, and continuing effect of orders, liens, instruments, billing practices, and enforcement actions described in this Complaint.

559. Defendants continue to assert rights, claims, or enforcement authority based on instruments and proceedings that Plaintiff alleges were procured through fraud, jurisdictional defect, constitutional violations, or other unlawful means.

**Declaratory Relief Standard**

560. Pursuant to 28 U.S.C. § 2201, this Court may declare the rights and legal relations of the parties in a case of actual controversy.

561. Declaratory relief is appropriate where it will clarify legal obligations and terminate ongoing uncertainty or coercive effects.

**Injunctive Relief Standard**

562. Plaintiff faces ongoing and irreparable harm, including clouded title, continuing billing, impaired constitutional rights, and suppression of property use.

563. Legal remedies alone are inadequate because monetary damages cannot fully unwind void instruments, restore accurate public records, or prevent future enforcement under color of unlawful authority.

564. Injunctive relief is warranted under Rule 65 where Plaintiff demonstrates likelihood of success on the merits, irreparable harm, balance of equities in her favor, and alignment with the public interest.

**Declaratory Relief Requested**

565. Plaintiff seeks declarations that:

a. Certain orders, liens, and instruments described in this Complaint were entered or recorded without jurisdiction or lawful authority and are void;

b. Enforcement actions taken pursuant to such void instruments are invalid;

c. Defendants' practices described herein violated Plaintiff's constitutional rights;

d. Plaintiff is entitled to correction of public records reflecting ownership status and removal of void encumbrances; and

e. Defendants may not rely on fraud-tainted or jurisdictionally defective instruments to justify ongoing billing or enforcement.

**Injunctive Relief Requested**

566. Plaintiff seeks temporary, preliminary, and permanent injunctions prohibiting Defendants from:

a. Enforcing or relying upon void or jurisdictionally defective orders or instruments;

b. Continuing collection or billing based on such instruments;

c. Recording or maintaining instruments known to lack lawful

146
COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

authority;

d. Interfering with Plaintiff's lawful property interests based on challenged instruments; and

e. Retaliating against Plaintiff for protected petitioning activity.

**Grounds for Equitable Relief**

567. Equitable relief is necessary to restore lawful status, prevent continued constitutional violations, and terminate the ongoing coercive effects of void or unlawful acts.

**Prayer**

568. Plaintiff requests:

1. Entry of declaratory judgment consistent with ¶ 565;

2. Issuance of temporary, preliminary, and permanent injunctions consistent with ¶ 566;

3. Orders correcting public records and removing void encumbrances; and

4. Such further equitable relief as the Court deems just and proper.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

## SIXTEENTH CAUSE OF ACTION

### 42 U.S.C. § 1983 — Procedural Due Process & Equal Protection

### (Monell Liability – County of Mono and

### June Lake Public Utilities District)

*(Against County of Mono; June Lake Public Utilities District; and DOES 1–*

*10 in their individual capacities for damages and*

*official capacities for prospective relief)*

569. Plaintiff realleges and incorporates by reference Paragraphs 1 through 568 as though fully set forth herein.

State Action and Capacities

570. At all relevant times, County of Mono and June Lake Public Utilities District ("PUD") acted under color of state law.

571. DOES 1–10 are County and/or PUD officers or employees who participated in, directed, or ratified the challenged conduct. They are sued in their individual capacities for damages and in their official capacities for prospective declaratory and injunctive relief.

**Monell Allegations**

572. The constitutional deprivations alleged herein were caused by policies, customs, practices, ratification by final policymakers, or deliberate indifference in training and supervision, including:

148
COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

a. Imposing recurring "special taxes," assessments, or utility charges without lawful standards, notice, or opportunity to be heard;

b. Issuing duplicative bills for the same parcel and billing period;

c. Continuing to bill Plaintiff after alleged foreclosure while simultaneously asserting inconsistent ownership positions;

d. Refusing to provide documentation, standards, or meaningful appeal procedures;

e. Ratifying these practices after notice of constitutional infirmities; and

f. Failing to train personnel regarding due process requirements and accurate ownership verification.

**Procedural Due Process Violations**

573. Plaintiff possesses protected property interests in her money, in accurate ownership status, and in freedom from unlawful financial exactions.

574. Defendants deprived Plaintiff of those interests without constitutionally adequate notice or a meaningful opportunity to be heard.

575. Defendants refused to provide standards, documentation, or appeal mechanisms sufficient to challenge assessments and duplicative billing.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

576. Post-foreclosure billing practices further deprived Plaintiff of property without lawful process.

**Equal Protection (Class-of-One)**

577. Defendants intentionally treated Plaintiff differently from similarly situated property owners by imposing duplicative charges, escalating "special taxes," and continuing post-foreclosure billing practices not uniformly applied to others.

578. The differential treatment lacked rational basis and was motivated, at least in part, by retaliatory or punitive intent.

**Causation and Damages**

579. As a direct and proximate result of Defendants' policies and practices, Plaintiff suffered:

    a. Financial loss from unlawful assessments and charges;

    b. Impairment of constitutionally protected property interests;

    c. Emotional distress; and

    d. Legal expenses.

**Prayer**

580. Plaintiff seeks:

    1. Compensatory damages against individual defendants;

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

2. Declaratory relief that the challenged billing and assessment practices violate the Fourteenth Amendment;

3. Injunctive relief requiring constitutionally adequate notice-and-hearing procedures and correction of ownership records;

4. Attorney's fees and costs under 42 U.S.C. § 1988; and

5. Such further relief as the Court deems just and proper.

### SEVENTEENTH CAUSE OF ACTION

### Declaratory Judgment — Ownership, Taxation, and

### Post-Foreclosure Billing

### (28 U.S.C. § 2201)

*(Against County of Mono; June Lake Public Utilities District; and*

*DOES 1–10)*

581. Plaintiff realleges and incorporates by reference Paragraphs 1 through 580 of this Complaint as though fully set forth herein.

582. An actual and justiciable controversy exists between Plaintiff and Defendants County of Mono and the June Lake Public Utilities District ("PUD") concerning: (a) the identity of the legally responsible party for taxation, assessments, and utility charges relating to the subject property; (b) the legality of Defendants' ongoing taxation and billing practices; and (c) the

legal effect of Defendants' continued billing and lien threats following the purported June 2025 foreclosure.

583. Despite Defendants' position that a foreclosure and title transfer occurred in or about June 2025, Defendants have continued to issue invoices, tax bills, service charges, and lien threats to Plaintiff, thereby asserting—expressly or by necessary implication—that Plaintiff remains responsible for post-sale obligations.

584. Plaintiff disputes Defendants' authority to continue billing her post-foreclosure and disputes the validity and lawfulness of the "special taxes," duplicative billing, and refusal to provide standards, documentation, and an appeal process, as alleged herein.

585. These disputes present an immediate and concrete need for judicial determination to prevent ongoing financial injury, improper collection activity, credit harm, and continuing uncertainty over Plaintiff's rights and obligations.

586. Pursuant to 28 U.S.C. § 2201, Plaintiff seeks a declaration of the parties' respective rights and obligations, including:

a. Whether Plaintiff is legally responsible for County taxes, assessments, or PUD charges billed after the purported June 2025 foreclosure;

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

b. Whether Defendants' "special tax" assessments and duplicative billing practices are lawful and constitutionally valid;

c. Whether Defendants may pursue Plaintiff for post-sale charges or threaten liens or collection based on disputed ownership or disputed billing practices; and

d. What process Defendants must provide—notice, standards, documentation, and an opportunity to be heard—before imposing or collecting property-related charges.

587. Declaratory relief is necessary to resolve the controversy, guide the parties' future conduct, and prevent further financial and legal harm.

588. Plaintiff seeks declaratory judgment consistent with the foregoing and such further relief as the Court deems just and proper.

## EIGHTEENTH CAUSE OF ACTION

### Quiet Title (Cal. Code Civ. Proc. §§ 760.010–764.080)

*(Against LC Equity Group, Inc.; Ashwood TD Services, LLC; Christopher Loria; and DOES 1–50)*

589. Plaintiff realleges and incorporates by reference Paragraphs 1 through 588 of this Complaint as though fully set forth herein.

590. The real property that is the subject of this action is commonly known as [street address], Assessor's Parcel No. [APN], Mono County,

153
COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

California, and is more particularly described in Exhibit A (legal description), incorporated herein. (Code Civ. Proc., § 761.020(a).)

591. Plaintiff claims fee simple title to the Property by virtue of a quitclaim deed recorded on or about June 2021 in the Official Records of Mono County as Instrument No. [insert]. (Code Civ. Proc., § 761.020(b).)

592. Defendants claim adverse interests based on a purported nonjudicial foreclosure and related instruments, including a Notice of Default, Notice of Trustee's Sale, and Trustee's Deed Upon Sale recorded on or about June 4, 2025 as Instrument No. [insert], and any subsequent conveyances or encumbrances derived therefrom. (Code Civ. Proc., § 761.020(c).)

593. Defendants' claimed interests are without right and constitute a cloud on title because, among other reasons:

a. Lack of Authority. After Plaintiff became sole record titleholder in June 2021, no valid recorded assignment of the deed of trust and no valid recorded substitution of trustee conveyed foreclosure authority to LC Equity Group, Inc.;

b. Statutory Noncompliance. The foreclosure documents were executed and recorded without "competent and reliable evidence" of the right to foreclose as required by Civil Code § 2924.17;

154
COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

c. Defective Notice. Plaintiff did not receive the statutory notices required by Civil Code §§ 2924–2924.9 and first learned of the sale on June 3, 2025, the day before the sale; and

d. Void Sale / No BFP. The sale was conducted by a party lacking authority and was an insider transaction; therefore no bona fide purchaser protection applies.

594. Because the sale was void ab initio, Plaintiff is not required to tender any amount to challenge title.

595. Plaintiff seeks determination of adverse claims and quieting of title as of the date this action was filed. (Code Civ. Proc., § 761.020(d).)

596. Plaintiff prays for judgment quieting title in Plaintiff's name, voiding the Trustee's Deed Upon Sale and all derivative instruments, directing record correction, and awarding costs and further appropriate relief.

### NINETEENTH CAUSE OF ACTION

**Wrongful Foreclosure; Cancellation of Instruments (Civ. Code § 3412); Restitution / Constructive Trust**

*(Against LC Equity Group, Inc.; Ashwood TD Services, LLC; Christopher Loria; Does 1–25 (investors); and Does 26–50)*

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

597. Plaintiff realleges and incorporates by reference Paragraphs 1 through 596 of this Complaint as though fully set forth herein.

598. A nonjudicial foreclosure is wrongful where the foreclosing party lacked authority, statutory requirements were not met, or the sale was illegal, fraudulent, or willfully oppressive, causing prejudice. Tender is not required where the sale is void.

599. Civil Code § 3412 permits cancellation of a written instrument where, due to fraud or other cause, it is void or voidable and, if left outstanding, may cause serious injury.

600. On or about June 2021, legal title to the Property was transferred solely to Plaintiff by recorded quitclaim deed in the Official Records of Mono County as Instrument No. [insert].

601. After Plaintiff became sole titleholder, no valid recorded assignment of the deed of trust and no valid recorded substitution of trustee conveyed foreclosure authority to LC Equity Group, Inc.

602. Defendants nevertheless initiated and completed foreclosure in the name of K.R. Property Development & Real Estate, LLC—an entity that no longer held title—thereby depriving Plaintiff, the true titleholder, of statutory notice and rights.

603. The Notice of Default, Notice of Trustee's Sale, any Substitution of Trustee, and the Trustee's Deed Upon Sale were executed and recorded in violation of Civil Code § 2924.17 because Defendants lacked competent and reliable evidence of the right to foreclose.

604. Plaintiff first learned of the scheduled sale on June 3, 2025, one day before the sale, depriving her of any meaningful opportunity to cure or seek relief, contrary to Civil Code §§ 2924–2924.9.

605. The purchaser was LC Equity Group, Inc. or an insider-affiliated interest, not an arm's-length bona fide purchaser for value.

606. But for Defendants' lack of authority and statutory violations, the sale would not have occurred; Plaintiff would have retained title or sold or refinanced at fair market value.

607. The trustee's sale was void ab initio; therefore tender is not required.

608. The Trustee's Deed Upon Sale and all derivative recorded instruments create a present and continuing cloud on title and must be canceled under Civil Code § 3412.

609. As a direct and proximate result, Plaintiff suffered damages including loss of the Property and its equity (FMV approximately $2.8

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

million), lost rental and business income (approximately $250,000 per year), out-of-pocket expenses, litigation costs, and emotional distress.

610. Defendants received the Property and/or benefits obtained through the wrongful sale and hold them as constructive trustees for Plaintiff's benefit. Equity requires disgorgement and restoration of the Property (or its full fair market value) to Plaintiff.

611. Plaintiff seeks cancellation of the recorded foreclosure instruments and all subsequent derivative instruments, declaratory relief that the sale conferred no title, injunctive relief preventing transfer or encumbrance, restitution/constructive trust relief, damages, costs, and such further relief as the Court deems just.

## TWENTIETH CAUSE OF ACTION

### Fraud (Intentional Misrepresentation and Concealment — Post-Foreclosure Scheme)

*(Against LC Equity Group, Inc.; Brian Cronin; Matthew Silver (individually); Neil Shaffer; Jarrod Ready; Griswold Law, APC; and DOES 1–50)*

612. Plaintiff realleges and incorporates by reference Paragraphs 1 through 611 of this Complaint as though fully set forth herein.

613. Fraud requires: (1) misrepresentation or concealment of a material fact (where a duty to disclose exists); (2) knowledge of falsity; (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damage. *(Lazar v. Superior Court (1996) 12 Cal.4th 631, 638; LiMandri v. Judkins (1997) 52 Cal.App.4th 326, 336–37.)* Fraud must be pled with specificity. *(Tarmann v. State Farm Mut. Auto. Ins. Co. (1991) 2 Cal.App.4th 153, 157.)*

614. Beginning in or about April 2025 and continuing through and after the June 2025 sale, LC Equity and Brian Cronin represented to courts, lenders, buyers, and Plaintiff that the June Lake property was worth "no more than $1.2 million," while possessing and concealing appraisals and market evidence reflecting substantially higher value, including certified appraisals of approximately $2.3 million (June 1, 2022) and approximately $2.85 million (February 8, 2024), and bona fide offers at or above $1.5 million.

615. Defendants knowingly concealed the higher appraisals and offers and promoted the depressed valuation to create a false "no equity" narrative, suppress competitive sale or refinance, and facilitate insider acquisition at a depressed price.

616. On June 4, 2025, LC Equity purported to foreclose and acquire the Property for approximately $949,000 through a transaction that was not

arm's length and was structured to benefit LC Equity and associated interests.

617. After asserting ownership, Defendants pursued additional court relief and financial demands premised on the asserted sale and purported "repairs" or administrative needs, while continuing to rely on defective or unauthorized instruments and representations to constrain Plaintiff's ability to contest title and recover value.

618. Matthew Silver (individually) and Receiver counsel Shaffer and Ready participated in presenting and relying upon proposed orders with unauthorized provisions and held them out as valid to courts and third parties while concealing the lack of on-record authorization and jurisdictional defects affecting enforceability.

619. These misrepresentations and concealments were made in filings, hearings, and communications directed to lenders, buyers, brokers, and Plaintiff, including by email, written payoff and ownership communications, recorded instruments, and submissions to court personnel and judicial officers.

620. Defendants intended courts and third parties to accept the depressed valuation and purported authority, intended lenders and buyers to withdraw, and intended Plaintiff to believe no viable refinance or sale

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

alternative existed, thereby inducing detrimental reliance and enabling loss of Plaintiff's equity.

621. Plaintiff reasonably relied on the apparent legitimacy of court submissions, recorded instruments, payoff communications, and representations by counsel and other actors holding themselves out as authorized, and Plaintiff suffered harm including loss of the opportunity to complete higher-value sale or refinance transactions and increased legal and financial burdens.

622. As a direct and proximate result, Plaintiff suffered damages including loss of the Property (FMV up to approximately $2.8 million), lost rental and business income (approximately $250,000 per year), litigation costs, reputational harm, and severe emotional distress.

623. Plaintiff seeks compensatory damages according to proof, punitive damages under Civil Code § 3294, equitable relief consistent with the other counts to cancel fraud-tainted instruments, costs, interest as allowed, and such other relief as the Court deems just and proper.

**TWENTY-FIRST CAUSE OF ACTION**

**Slander of Title (California Common Law)**

*(Against: County of Mono; Civica Law Group, APC; Matthew Silver; LC Equity Group, Inc.; Brian Cronin; Griswold Law, APC; and Does 1–50)*

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

624.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 623 of this Complaint as though fully set forth herein.

625.    Under California law, slander of title requires: (1) a publication of a false statement disparaging title; (2) falsity; (3) malice; and (4) special damages. (Seeley v. Seymour (1987) 190 Cal.App.3d 844, 858–59.)

626.    Beginning in or about 2018 and continuing through at least 2025, Defendants published disparaging statements concerning Plaintiff's title and right to sell, refinance, or convey the June Lake property by recording, maintaining, and/or refusing to release instruments that were void, unauthorized, or legally ineffective, including but not limited to:

a. County-recorded administrative liens and charges that functioned as a de facto lis pendens, including at least one lien recorded in or around 2018, and other lien instruments that were later rejected, expunged, or void;

b. Encumbrances and recordings maintained despite expungement-related rulings and notice to County counsel and staff that the instruments were legally defective;

c. Foreclosure-related instruments, including a Notice of Default, Notice of Trustee's Sale, and Trustee's Deed Upon Sale, premised on foreclosure activity pursued against the wrong party and

without competent and reliable evidence of authority after Plaintiff became the sole record titleholder in June 2021; and

d. Recorded instruments and "order-based" encumbrances transmitted and used with title companies, lenders, and third parties as if valid, despite jurisdictional defects, including periods of appeal divestiture (CCP § 916) and bankruptcy stay constraints (11 U.S.C. § 362).

627.   These publications were false because the recorded instruments and their asserted legal effects were void, unauthorized, and/or legally ineffective, and did not constitute valid encumbrances against Plaintiff's title or the property.

628.   Defendants acted with malice, meaning they knew the instruments were false or legally defective, or acted with reckless disregard for their truth or validity, including because:

a. Plaintiff repeatedly gave notice of the defects, expungements, and jurisdictional bars;

b. Defendants possessed the procedural history and court rulings demonstrating that the instruments were void or beyond lawful authority; and

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

c. Defendants nevertheless recorded, maintained, or refused to withdraw the instruments in order to suppress Plaintiff's refinancing and sale efforts, depress market value, and preserve leverage for foreclosure, receivership fees, and insider acquisition.

629.   Plaintiff suffered special damages as a direct and proximate result of the title disparagement, including but not limited to:

a. Lost refinancing and lending opportunities after lenders and title reviewers identified recorded liens, County instruments, and foreclosure/receivership-related encumbrances that prevented issuance of insurable title;

b. Loss of bona fide sale opportunities, including at least one sale prospect at or above approximately $1.5 million during 2025 that was chilled or terminated after title defects and payoff/title obstacles were raised;

c. Increased carrying costs, including continued interest accrual, taxes, and forced expenses during the period Plaintiff was prevented from closing a refinance or sale;

d. Out-of-pocket costs incurred to mitigate and investigate title defects, including title reports, professional consultations, and administrative/legal expenses; and

e. Loss of market value and bargaining position resulting from Defendants' continuing publication of void or unauthorized encumbrances.

630.   Plaintiff seeks compensatory and special damages according to proof, punitive damages against the individual and private-entity defendants for malice, cancellation and expungement of the disparaging instruments, injunctive relief prohibiting further publications, costs of suit, and such further relief as the Court deems just and proper.

## TWENTY-SECOND CAUSE OF ACTION

## Claim and Delivery / Return of Personal Property (Replevin)

## (CCP § 512.010 et seq.)

*(Against: Griswold Law, APC; Neil Shaffer; Jarrod Ready; LC Equity Group, Inc.; Brian Cronin; County of Mono; and Does 1–50)*

631.   Plaintiff realleges and incorporates by reference Paragraphs 1 through 630 of this Complaint as though fully set forth herein.

632.   Under California Code of Civil Procedure §§ 512.010–516.130, a plaintiff may obtain claim and delivery (replevin) upon showing: (1) a right to immediate possession of specific personal property; (2) wrongful detention by a defendant; and (3) the property's value and location (if known).

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

633. Plaintiff is the owner of, and is entitled to immediate possession of, personal property located at or taken from the June Lake premises, including but not limited to: business and legal files; computers and external drives; furniture; fixtures; equipment; tools; décor; inventory; boxed personal effects; and irreplaceable family heirlooms (the "Personal Property").

634. Plaintiff never sold, transferred, abandoned, or voluntarily conveyed title to the Personal Property.

635. Beginning no later than the receivership lockout period and continuing through and after the June 2025 foreclosure, Defendants wrongfully detained and/or controlled the Personal Property by:

a. Denying Plaintiff access to retrieve her belongings;

b. Refusing to provide a complete inventory;

c. Failing to comply with California statutory notice and storage requirements applicable to property removed or retained after possession changes (including Cal. Civ. Code §§ 1980–1991); and/or

d. Conditioning return of Plaintiff's personal property on disputed payments, fees, or "approval" by Defendants, despite the absence of lawful authority to withhold Plaintiff's chattels.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

636.   Upon information and belief, Defendants presently possess, control, store, or have disposed of portions of the Personal Property, either at the premises or in storage under Defendants' direction.

637.   The aggregate value of the Personal Property exceeds $150,000 and includes items of unique and sentimental value for which monetary damages are not an adequate substitute.

638.   Immediate possession is necessary to prevent further loss, destruction, concealment, spoliation, or conversion of the Personal Property, and to permit Plaintiff to restore her personal and business affairs.

639.   Plaintiff seeks issuance of a writ of possession directing the Sheriff to seize and deliver the Personal Property to Plaintiff, together with an order requiring Defendants to preserve all property pending turnover, an alternative money judgment for any items not returned, damages for loss of use, and costs of suit.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

## TWENTY-THIRD CAUSE OF ACTION

### Excessive Fines — U.S. Const. amend. VIII

### (as incorporated by amend. XIV)

### (42 U.S.C. § 1983; Monell Liability)

*(Against: County of Mono and Does 1–50)*

640.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 639 of this Complaint as though fully set forth herein.

641.    The Eighth Amendment's Excessive Fines Clause applies to state and local governments and prohibits punitive financial exactions that are grossly disproportionate to the gravity of the alleged offense. (*Timbs v. Indiana* (2019) 586 U.S. 146, 139 S.Ct. 682; *United States v. Bajakajian* (1998) 524 U.S. 321; *Austin v. United States* (1993) 509 U.S. 602.)

642.    Mono County imposed and sought to enforce punitive financial exactions against Plaintiff, including escalating "administrative" penalties, duplicative assessments, lien charges, and enforcement-related fees that functioned as punishment and coercion rather than compensation for proven costs.

643.    The County's exactions were grossly disproportionate because they escalated without neutral standards, were repeatedly duplicated, and

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

were used as a lever to justify and maintain a receivership and dispossession rather than to remedy a legitimate public harm.

644.    The challenged fines and exactions were imposed and maintained pursuant to County policy, custom, and practice, including:

a. A pattern and practice of imposing escalating penalties and "special tax" type charges without meaningful notice, standards, or hearing;

b. Recording and maintaining liens and enforcement instruments as coercive tools even after notice of defects, expungements, or jurisdictional bars;

c. Refusing to provide a meaningful appeal mechanism or standards for assessment calculations; and

d. Ratification by County policymakers, including County Counsel and final decisionmakers who were repeatedly placed on notice of the constitutional infirmities and nevertheless approved, continued, or refused to correct the conduct.

645.    As a direct and proximate result of the County's excessive-fines practices, Plaintiff suffered financial loss, impaired lending and sale opportunities, litigation expense, emotional distress, and deprivation of property rights.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

646. Plaintiff seeks compensatory damages under 42 U.S.C. § 1983, declaratory and injunctive relief prohibiting further imposition or collection of unconstitutional exactions, attorney's fees and costs under 42 U.S.C. § 1988, and such other relief as the Court deems just and proper.

## TWENTY-FOURTH CAUSE OF ACTION

### Federal Takings Claim

### (42 U.S.C. § 1983 – Fifth & Fourteenth Amendments; Monell Liability)

*(Against: County of Mono and DOES 1–50)*

647. Plaintiff realleges and incorporates by reference Paragraphs 1 through 646 of this Complaint as though fully set forth herein.

### A. Constitutional Standard

648. The Fifth Amendment to the United States Constitution, applicable to state and local governments through the Fourteenth Amendment, prohibits the taking of private property for public use without just compensation.

649. A government-authorized physical occupation of private property constitutes a per se taking requiring compensation. *Cedar Point Nursery v. Hassid*, 594 U.S. 139 (2021); *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982).

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

650. Alternatively, governmental action that interferes with investment-backed expectations and deprives an owner of economically viable use constitutes a regulatory taking under *Penn Central Transp. Co. v. New York City*, 438 U.S. 104 (1978).

### B. County-Authorized Physical Occupation and Exclusion

651. Acting under color of state law and pursuant to asserted nuisance abatement and code enforcement authority, the County of Mono sought and obtained appointment of a court receiver over Plaintiff's property in or about October 2024.

652. The receivership and related enforcement mechanisms were pursued as part of the County's asserted public regulatory objectives, including nuisance abatement, tax enforcement, and code compliance.

653. As a direct result of County-initiated and County-ratified enforcement actions, Plaintiff was:

a. Locked out of the property;

b. Excluded from possession and control;

c. Deprived of the right to exclude others;

d. Prevented from operating, leasing, refinancing, or selling the property; and

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

e. Deprived of access to and control over rental revenues and income streams.

654. The exclusion was continuous and enforced under color of County authority, resulting in Plaintiff's loss of physical possession and practical control over the property.

655. These actions constituted a government-authorized physical occupation and deprivation of core property rights, including the rights to possess, exclude, and economically use the property.

### C. Public Use / Regulatory Purpose

656. The County justified and pursued these actions under asserted public regulatory purposes, including nuisance abatement, tax enforcement, and code compliance, thereby bringing the conduct within the scope of the Takings Clause.

### D. Alternative Regulatory Taking (Penn Central)

657. In the alternative, the County's conduct effected a regulatory taking by:

a. Interfering with Plaintiff's distinct, investment-backed expectations;

b. Destroying economically viable use of the property;

c. Preventing refinancing or market-based disposition; and

172
COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

d. Forcing a below-market disposition following prolonged exclusion and title impairment.

658. The economic impact on Plaintiff was severe and substantial.

**E. Monell Liability**

659. The constitutional deprivation described herein was caused by official County policy, custom, practice, and/or ratification, including:

a. Use of receivership as an enforcement mechanism to obtain physical control of property;

b. Recording and maintaining enforcement instruments to impair title;

c. Seeking judicial expansion of receiver authority; and

d. Continuing enforcement despite notice of constitutional objections.

660. County Counsel and other final policymakers ratified and approved these enforcement actions despite notice of their constitutional implications.

661. The County's ratification and failure to correct the deprivation constitutes deliberate indifference under *Monell v. Dep't of Soc. Servs.* (1978) 436 U.S. 658.

173
COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

### F. Injury

662. As a direct and proximate result of the County's actions, Plaintiff suffered loss of possession, rental value, equity, and other constitutionally compensable economic losses.

### G. Relief Requested

663. Plaintiff seeks just compensation, declaratory and injunctive relief, attorney's fees under 42 U.S.C. § 1988, and such further relief as the Court deems just and proper.

## TWENTY-FIFTH CAUSE OF ACTION

### Inverse Condemnation — Cal. Const. art. I, § 19

*(Against: County of Mono)*

664. Plaintiff realleges and incorporates by reference Paragraphs 1 through 654 of this Complaint as though fully set forth herein.

665. The County's actions, undertaken under color of nuisance abatement and code enforcement authority, caused and authorized a physical occupation and exclusion of Plaintiff from the June Lake property through a court-imposed receivership and related enforcement mechanisms.

666. Beginning no later than October 2024, and continuing through the June 2025 foreclosure and beyond, the County pursued and obtained orders that resulted in Plaintiff being locked out, deprived of possession and

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

use, deprived of the right to exclude others, and deprived of the ability to operate or realize economic value from the property.

667.   The County's conduct took or damaged Plaintiff's property interests for asserted public purposes, including nuisance abatement and regulatory enforcement, and therefore constitutes a taking or damaging under Article I, § 19 of the California Constitution.

668.   As a direct and proximate result, Plaintiff suffered constitutionally compensable losses including, but not limited to: loss of rental value during dispossession; loss of use and enjoyment; diminution in value; and loss of equity through a forced and depressed disposition.

669.   Plaintiff is entitled to just compensation for the taking/damaging, including but not limited to diminution in value, rental value during dispossession, and other constitutionally compensable losses.

670.   Plaintiff is entitled to recover reasonable litigation costs and attorney's fees under California Code of Civil Procedure § 1036 upon prevailing on this inverse condemnation claim.

671.   WHEREFORE, Plaintiff seeks judgment against Defendant County of Mono for just compensation in an amount according to proof, prejudgment interest, costs of suit, and attorney's fees pursuant to Code of

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

Civil Procedure § 1036, and such other and further relief as the Court deems just and proper.

## TWENTY-SIXTH CAUSE OF ACTION

### Declaratory and Injunctive Relief for Violations of the California Constitution

### (Cal. Const., art. I, § 7 [Due Process]; art. I, § 13 [Unreasonable Searches and Seizures])

*(Against: County of Mono; Nick Criss; DOE Code Enforcement Officer; Mono County Compliance Division; Civica Law Group, APC; Matthew Silver; and DOES 1–50, inclusive)*

672. Plaintiff realleges and incorporates by reference Paragraphs 1 through 671 of this Complaint as though fully set forth herein.

673. Article I, section 7 of the California Constitution guarantees that no person may be deprived of life, liberty, or property without due process of law, including notice and a meaningful opportunity to be heard.

674. Article I, section 13 of the California Constitution provides that people are secure in their persons, houses, papers, and effects against unreasonable searches and seizures, and that warrants must be supported by probable cause, particularly describing the place to be searched and the things to be seized.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

675. At all relevant times, Defendants acted under color of law, and/or in coordination with County enforcement activity, including through the use of administrative enforcement, inspections, warrant-based searches, record instruments, and judicial processes to seize, occupy, exclude, and dispossess Plaintiff from her property.

***A. California Constitutional Due Process Violations (Art. I, § 7)***

676. Defendants deprived Plaintiff of protected property interests without constitutionally adequate notice, a fair hearing, or a meaningful opportunity to be heard, including but not limited to:

a. initiating or enforcing lockouts, seizures, and exclusions based on void or unauthorized instruments;

b. imposing and escalating charges, "special taxes," assessments, and duplicative billings without standards, documentation, or a meaningful appeal path;

c. recording and maintaining instruments that clouded title and obstructed refinancing or sale while refusing to provide any fair mechanism to challenge or correct the record; and

d. continuing to demand payment and threaten enforcement after Plaintiff was purportedly dismissed from the Mono County action

without notice, and after the purported foreclosure, while simultaneously refusing to accept or file Plaintiff's objections.

677. These practices were not isolated mistakes. They reflect systemic and intentional procedural deprivation, retaliation, and administrative obstruction—conduct that violates California's due process protections independent of federal standards.

***B. California Constitutional Search-and-Seizure Violations (Art. I, § 13)***

678. Defendants also violated Article I, section 13 by conducting, authorizing, or ratifying unlawful inspections and searches of Plaintiff's property under color of code enforcement authority, including through the procurement and/or execution of an inspection warrant and entry premised on false or misleading information, and without constitutionally adequate probable cause.

679. Upon information and belief, Defendants used warrant-based entry and inspection procedures as a retaliatory tool to generate enforcement leverage, to justify escalating penalties, and to support further deprivation of Plaintiff's possessory rights, rather than for any legitimate neutral code enforcement purpose.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

## C. Need for Declaratory and Injunctive Relief

680. An actual and present controversy exists between Plaintiff and Defendants regarding whether Defendants' enforcement practices, warrant-based intrusions, and due-process denials violated the California Constitution, and whether Defendants may continue to rely on void instruments, retaliatory enforcement, and unconstitutional practices.

681. Plaintiff has no adequate remedy at law to prevent continuing harm because Defendants continue to rely on recorded instruments, billing practices, and enforcement threats that impose ongoing injury, including clouded title, credit harm, and continued coercive collection activity.

682. Plaintiff is entitled to declaratory relief and to temporary, preliminary, and permanent injunctive relief prohibiting Defendants from continuing to enforce or rely upon unconstitutional practices and instruments.

### PRAYER FOR RELIEF

683. Plaintiff requests judgment as follows:

a. For a declaration that Defendants violated Plaintiff's rights under Article I, section 7 and Article I, section 13 of the California Constitution;

b. For temporary, preliminary, and permanent injunctive relief

179
COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

prohibiting further unconstitutional enforcement, inspection-warrant abuse, record-clouding, and procedural obstruction;

c. For an order requiring correction and expungement of unconstitutional instruments and practices to the extent permitted by law;

d. For costs of suit and such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff PATRICIA ELAINE ANDERSON HOOPER hereby demands a trial by jury on all issues so triable as a matter of right.

Executed on February 16, 2026, at San Clemente, California.

Respectfully submitted,

**Patricia Elaine Anderson Hooper**
Plaintiff, Pro Se
325 E. Avenida Cordoba
San Clemente, CA 92672
(949) 922-0929
patricia@royceip.com

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF